Commonwealth *v.* Jefferson, Appellant.

Argued November 13, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Austin J. McGreal,* with him *John J. McCreesh, III,* for appellant.

*Edward G. Rendell,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, October 12, 1971:

Irving Jefferson was convicted by the same jury of murder in the first degree, aggravated robbery and carrying a concealed deadly weapon. Motions in arrest of the judgments or for a new trial were denied. On the murder conviction, Jefferson was sentenced to life imprisonment as the jury directed, and on the robbery conviction he was sentenced to imprisonment for a term of 5 to 20 years. Sentence was not imposed on the conviction for carrying a concealed deadly weapon. From the judgment of sentence on the murder conviction, an appeal [No. 530] was filed in this Court. An appeal from the judgment of sentence on the robbery conviction, and an appeal from the denial of a new trial on the conviction for carrying a concealed deadly weapon were filed in the Superior Court. The last two mentioned appeals were subsequently certified here, designated Nos. 570 and 571. All three appeals will be disposed of in this one opinion.

The prosecution arose from the stabbing and death of William James Calhoun in Philadelphia. Jefferson admitted to the police that he committed the stabbing. The first question presented on appeal is whether constitutional due process was violated at trial by permitting evidentiary use of Jefferson's incriminating statements.[1] The pertinent facts may be summarized as follows:

---

[1] A pretrial motion to suppress was overruled after an evidentiary hearing.

The victim, Calhoun, was stabbed about one p.m., on September 27, 1968, as he entered his automobile which was parked on a public street. The police arrived on the scene shortly after the occurrence and were supplied by an eyewitness with a general description of the felon, and a minute description of the clothing he was wearing. About one-half hour later, Jefferson, fitting the description given, was taken into police custody about three blocks away and a search of his person disclosed a "honing" knife with a six-inch blade concealed in a waist band. He was taken to a district police station and later to a division detective headquarters where he was "booked" on a charge of aggravated robbery. He gave the police a false name and upon being warned of his constitutional rights, in accordance with the requirements of *Miranda v. Arizona*,[2] immediately replied, "Yeah. How many years am I going to get? I ain't got nothing else to say until I see my lawyer." The questioning then ceased, and Jefferson was transferred to a detention center. Subsequently, he was arraigned before a committing magistrate on the robbery charge. At this hearing, he was represented by a member of the Public Defenders' Office who happened to be present in the courtroom at the time.

After the stabbing, the victim, Calhoun, was taken to a hospital and underwent major surgery. The operation was successful and recovery was anticipated. However, unexpected complications developed and he died on October 4th.

A warrant charging Jefferson with murder was served on October 7th and he was immediately taken to the police administration building. He was again fully advised of his "Miranda rights" and when asked if he understood what he had been told, replied, "Yes,

---

[2] 384 U.S. 436, 86 S. Ct. 1602 (1966).

I know what you're talking about" . . . . "Yes, I know all that stuff" . . . . "I understand you are looking for a guy with bushy hair and wearing a long black coat." Whereupon, a photograph was produced and shown to Jefferson of himself which was taken on September 27th and a police officer asked, "Isn't this you?" Jefferson immediately said, "Oh s---. I f----- up. I might as well tell you what happened." He then proceeded to explain that the stabbing occurred during a struggle which ensued when he attempted to collect a gambling debt from Calhoun. After this oral statement, Jefferson was permitted to talk with his mother over the phone. Shortly thereafter, he was again given all the warnings required by *Miranda* and was then asked specific questions about the stabbing. These questions and answers were recorded on a typewriter. When this was completed, Jefferson read the statement, made some corrections, signed it at the end and initialed each sheet. The above related oral admissions and recorded statement were admitted over objection against Jefferson at trial.

The question follows: Did Jefferson's notice to the police on September 27th that he would not answer any questions until he saw his lawyer "carry over" or render constitutionally impermissible the questioning that occurred ten days later in the absence of counsel to assist Jefferson? We conclude not.

There is no question but that Jefferson's refusal to answer questions on September 27th precluded further questioning on that occasion, and the police properly desisted therefrom. See *Miranda v. Arizona,* supra. And having once put the police on notice that he would not respond to questioning "until I see my lawyer", the burden was on the Commonwealth to establish that Jefferson's change of mind was made voluntarily, knowingly and intelligently. *Miranda v. Arizona,* supra, at

475, 86 S. Ct. at 1628. In our view, the record supports the conclusion that this burden was met.

After Calhoun died the nature of the criminal charges confronting Jefferson, while arising out of the same circumstances, changed substantially, and the possible consequences became much more serious. Certainly, the police did nothing constitutionally impermissible in alerting him to these facts. And, we are not persuaded that the mandates of *Miranda* were violated when the police sought to determine if Jefferson, in view of the changed situation, was willing to talk without a lawyer being present. We think Jefferson had the right to change his mind in this respect if he did so voluntarily and with a complete awareness of his rights, particularly his right to remain silent and his right to have legal assistance during any questioning. See *Commonwealth v. Franklin,* 438 Pa. 411, 265 A. 2d 361 (1970) ; *United States v. Brady,* 421 F. 2d 681 (2d Cir. 1970) ; *State v. Emmett,* 463 P. 2d 609 (Wash. 1970) ; and, *Hill v. Texas,* 429 S.W. 2d 481 (Texas 1968). See also *Westover v. United States,* 384 U.S. 436, 86 S. Ct. 1602 (1966). Specific warnings of these rights were given in three different instances before the challenged statements were made and Jefferson's responses to these warnings leave no doubt in our minds that he completely understood them. We conclude that, under the circumstances, the challenged statements were properly admitted as evidence at trial.

The sufficiency of the evidence to establish beyond a reasonable doubt that the stabbing caused Calhoun's death is next questioned.

An autopsy performed shortly after death disclosed evidence of two stab wounds in the chest which penetrated the right ventricle of the heart, but which had been successfully repaired by surgery; stab wounds on the right side of the abdomen; a stab wound of the left

index finger; and two stab wounds of the left leg. The doctor who performed the autopsy testified that, in his opinion, blood clots formed and "inflamed the veins" in the area of the injury to the leg following the heart surgery; that these clots finally broke away and traveled in the bloodstream through the heart to the lungs foreclosing the flow of blood through the body; and that it was this obstruction that ultimately caused death.

While the stab wounds of the leg were not mortal in themselves, the evidence was sufficient to warrant the jury in finding that these wounds started a chain of causation that eventually led to Calhoun's death. This was sufficient to establish the required causal connection between the stabbing and the death. Cf. *Commonwealth ex rel. Peters v. Maroney*, 415 Pa. 553, 204 A. 2d 459 (1964).

The final assignment of error requiring discussion involves the following incident at trial.

Shortly after the stabbing, a police officer trained in this science examined Calhoun's automobile for fingerprints and found prints, other than those of the victim, on the inside of the window of the door on the driver's side of the vehicle. Later, another technician compared photographs of these prints with the prints on a card in police files which bore Jefferson's photo and name, and the two were found to be identical. Since the last mentioned technician when called as a trial witness lacked competency to testify that the prints on the card in the police files were actually those of Jefferson, his testimony was objected to by Jefferson's counsel. When the trial court ascertained that the individual who recorded the prints on the card was ill and unavailable to testify at trial, it directed that the jury be removed from the courtroom and the technician witness proceed to take Jefferson's fingerprints in the

courtroom. This was done and then the technician testified that the prints recorded in the courtroom were the same as those appearing on the police file card. It is maintained that this procedure was so prejudicial as to deny Jefferson a fair trial and also violated his constitutional rights. This position is likewise devoid of merit.

Fingerprint evidence is a nontestimonial means of identification to which the Fifth Amendment Self Incrimination Clause does not apply. *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826 (1966). While such evidence is within the protection of the Fourth Amendment (*Davis v. Mississippi*, 394 U.S. 721, 89 S. Ct. 1394 (1969)), the trial court, as we see it, had sufficient justification and probable cause to order Jefferson to submit to the recording of his fingerprints, and since it was done in the absence of the jury no prejudice resulted. Cf. *O'Halloran v. Rundle*, 266 F. Supp. 173 (E.D. Pa. 1967), affirmed, 384 F. 2d 997 (3d Cir. 1967), cert. denied, 393 U.S. 860, 89 S. Ct. 138 (1968).

In sum, our examination of the record discloses no meritorious reason why the judgments of sentence should be reversed, and, hence, said judgments will be affirmed. However, Appeal No. 571 is from an interlocutory order and it will be quashed.

It is so ordered.

Mr. Justice COHEN took no part in the decision of this case.