328 A.2d 493
**COMMONWEALTH of Pennsylvania**
v.
**Mervin BULLOCK, Appellant.**

Supreme Court of Pennsylvania.

Argued April 23, 1974.

Decided Nov. 20, 1974.

———◆———

James Dunworth, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., David Richman, Asst. Dist. Atty., Chief, Appeals Div., James Garrett, Abraham J. Gafni, Deputy Dist. Atty. for Law, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

## OPINION

EAGEN, Justice.

Mervin Bullock was convicted by a jury of aggravated robbery and murder in the first degree. Following the

denial of post trial motions, a sentence of life imprisonment was imposed on the murder conviction.[1] This appeal followed.

The sufficiency of the evidence to sustain a conviction of murder in the first degree is not questioned, nonetheless we have studied the record and are completely satisfied the trial evidence was more than ample to warrant such a conviction. From the evidence, the jury could find that on the evening of June 26, 1971, Bullock armed with a .32 automatic pistol robbed and fatally shot one Daniel Taylor in Philadelphia.

Two errors allegedly occurred in the prosecution process, which it is said require a new trial. The first such asserted error is the trial court's refusal to suppress evidence of certain oral admissions and of a recorded incriminating statement Bullock made to the police. It is urged this evidence was obtained in violation of Bullock's right to counsel under the Sixth Amendment. We are not so persuaded. The relevant facts are these.

Shortly before midnight of the day of the crimes, Bullock voluntarily appeared in the North Central Detective Division of the Philadelphia Police Department and told the officer at the desk he was "here to give [himself] up about a shooting." Shortly thereafter, he was transferred to the Police Administration Building by a Detective Brown. On the way to the Administration Building, Bullock, without being asked any questions, spontaneously told Brown that he was involved in the Taylor robbery, but that Taylor was shot when the gun discharged accidentally.

Upon arrival at the Police Administration Building, Bullock produced a card with his attorney's name thereon and requested permission to contact this attorney "before I talk to you." Permission was granted and the attorney's phone number was dialed but contact could not

1. Sentence was suspended on the robbery conviction.

be made. Detective Brown then asked Bullock, "Do you want to wait until you get hold of your lawyer and try to call him. again, or do you want to tell us what took place?" Bullock replied, "I'll tell you what took place and then I'll call my lawyer." Bullock was then advised of his constitutional rights as mandated by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and in answers to questions indicated he clearly understood his right to remain silent and that he was entitled to have the assistance of counsel before and when he talked with the police. Bullock then told Detective Brown he took part in the robbery of Taylor, but insisted Taylor was shot accidentally. Subsequently, a formal or recorded statement was taken. Bullock's version of the robbery and shooting in this statement corresponded with that given previously. However, it was more detailed. Upon its completion, Bullock read and signed the statement on each page. After this, Bullock made another attempt to contact his attorney by phone but was unsuccessful. It is the court's ruling, refusing to suppress and in permitting evidentiary use of Bullock's admissions and recorded statement, made after he told the police he wanted to contact his attorney "before I talk to you," that is the principal assignment of error in this appeal.

The thrust of Bullock's argument in connection with the foregoing is that once the police were informed he wanted the assistance of a lawyer, it was improper and constitutionally impermissible to ask him any questions without a lawyer being present. This position is based on the following language of the Court in *Miranda v. Arizona*, supra, at pages 444–445, 86 S.Ct. at 1613. "If, however, [the defendant] indicates *in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.*" [Emphasis added.] Thus, it is argued that when Bullock requested counsel, all questioning should have ceased, and, particularly, Detective Brown should not

have asked Bullock whether he wanted to wait for his lawyer.

However, such an interpretation loses sight of the fact that the United States Supreme Court in *Miranda* recognized that "[a]n express statement that the individual is willing to make a statement and *does not want an attorney* followed closely by a statement could constitute a waiver [of the right to counsel]." *Id.* at 475, 86 S.Ct. at 1628. [Emphasis added.] See also *Commonwealth v. Franklin*, 438 Pa. 411, 265 A.2d 361 (1970). Recently, in *Commonwealth v. Clark*, 454 Pa. 329, 311 A.2d 910 (1973), this Court resolved an analogous situation. Therein the defendant, Phillip Clark, was arrested for the murder of a police officer who was in pursuit of Clark while he was fleeing from a robbery. While Clark was being apprised of his *Miranda* warnings, he was asked, "Do you want either to talk with a lawyer at this time or to have a lawyer with you while we ask you questions?" Clark responded that he would like to talk with his mother. Then he was asked, "Are you willing to answer questions of your own free will, without force or fear and without any threats or promises having been made to you?" Clark answered, "May I speak to my mother?" At this juncture, Clark's mother was brought into the interview room and left alone with her son for half an hour. Afterwards, the detective returned to the room and once again asked Clark, "Do you want to talk to a lawyer at this time or to have a lawyer with you while we ask you questions?" At this point, Clark provided the police incriminating information. In *Clark*, we unequivocally decided that the question of "whether a lawyer was wanted cannot be said to be 'interrogation' without prior warning of constitutional rights, such as was condemned in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); it was rather a further recognition of those rights, and preparatory to interrogation. We have defined 'interrogation' under Mi-

randa as including 'any question likely to or expected to elicit a confession'. *Commonwealth v. Simala*, 434 Pa. 219, 227, 252 A.2d 575, 579 (1969). The question which preceded the incriminating statement of Clark was clearly not of that sort, nor otherwise the product of compulsion. Cf. *Commonwealth v. Hamilton*, 445 Pa. 292, 285 A.2d 172 (1971); *Commonwealth v. Bordner*, 432 Pa. 405, 247 A.2d 612 (1968)." *Id.* 454 Pa. at 335, 311 A.2d at 913. See also *Commonwealth v. DuVal*, 453 Pa. 205, 307 A.2d 229 (1973), and *Commonwealth v. Franklin*, supra. In *Franklin* the defendant was given his *Miranda* warnings, at which time he requested the presence of an attorney and all questioning ceased. During the next few hours, Franklin attempted to contact his attorney several times to no avail. A public defender was called to counsel the defendant, but Franklin was "not satisfied" with his services and declined to use the defender. Subsequently, Franklin was told by a detective that "we [the police] didn't have to have a statement from him because witnesses had identified him but we would like to hear his side of the story." At this point Franklin agreed to talk with the police and was given his full *Miranda* warnings before interrogation began. The Court held:

"The record is perfectly clear that the defendant was very thoroughly informed as to the rights to which he was entitled, and that he understood those rights. 'An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver.' *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). Moreover, there is utterly no evidence that the defendant was coerced or 'worn down' in any way whatsoever. No trickery or deception was employed to beguile the defendant into falsely thinking that it would be in his best interests to give a statement."

438 Pa. at 417, 265 A.2d at 365. See also *Commonwealth v. Jefferson,* 445 Pa. 1, 281 A.2d 852 (1971).

Instantly, Bullock was asked by Detective Brown if he still wanted an attorney after his unsuccessful attempt to reach his counsel. Bullock stated that he no longer desired counsel. At that point, as in *Franklin,* Bullock was warned of his *Miranda* rights. In particular, he was notified:

"You have a right to talk to a lawyer of your own choice before we ask you any questions, and also to have a lawyer here with you while we ask questions.

"If you cannot afford to hire a lawyer, and you want one, we will see that you have a lawyer provided to you free of charge before we ask you any questions."

In conjunction with these warnings, appellant was asked in appropriate part:

"Q. Do you understand that you have a right to talk with a lawyer before we ask you any questions?

"A. Yes.

"Q. Do you understand that if you cannot afford to have a lawyer, and you want one, we will not ask any questions until a lawyer is appointed for you free of charge?

"A. Yes.

"Q. Do you want either to talk with a lawyer at this time, or to have a lawyer with you while we ask you questions?

"A. No."

Under these facts, we conclude that Bullock had a right to change his mind and speak to the police without the presence of counsel. The record demonstrates that he did so voluntarily and with complete awareness of his rights. Cf. *Commonwealth v. Jefferson,* supra. The statement as to whether Bullock still wanted counsel was a permissible inquiry, and, in no way did it consti-

tute "compulsion" against the will of the accused. See *Commonwealth v. Clark,* supra. But see *Commonwealth v. Nathan,* 445 Pa. 470, 285 A.2d 175 (1970).[2]

Bullock's final contention is that *the trial court erred in refusing two requested points for charge.* One such request read, "On a murder indictment the jury may in its discretion return a verdict of second degree even though it finds that a felony was being committed at the time of the killing." The other such request read, "Even if the jury finds that the accused was in the process of committing a felony at the time that the death of the decedent ensued, the jury may exercise compassion and may return a verdict of second degree murder only."

An examination of the charge instantly discloses that the court defined for the jury the degrees of murder and the crime of voluntary manslaughter. The jury was also specifically instructed it could find Bullock guilty of murder in the first degree, or of murder in the second degree, or of voluntary manslaughter or not guilty. In view of this, the court did not commit reversible error in refusing the suggested points for charge. Moreover, as we recently stated in *Commonwealth v. Joseph,* 451 Pa. 440, 450, 304 A.2d 163 (1973)

"[T]he trial judge need not instruct the jury that they may, as an act of mercy, return a verdict of second degree in a felony murder situation. Instead, all that is required . . . is that the court define the various types of homicide and tell the jury that they have the

2. In *Nathan* we held inadmissible a confession obtained under circumstances very similar to those which existed in this case. We believe that *Nathan* is distinguishable from the case before us in that there the police "advised" the accused that it was sometimes helpful to give a statement, then confronted him with a statement made by the girl who was with him at the time of the murder, and after he had expressed a willingness to talk, failed to warn him again of his rights. In the instant case there is no evidence of police advice or persuasion, and a second set of warnings was given *after* appellant said that he would make a statement in the absence of his attorney.

ultimate responsibility of fixing the degree of guilt." [Cite omitted.]

Judgment affirmed.

MANDERINO, J., took no part in the consideration or decision of this case.

O'BRIEN, J., concurs in the result.

ROBERTS, J., filed a dissenting opinion.

NIX, J., dissents.

ROBERTS, Justice (dissenting).

Once again the majority indulges its crabbed views of the rights of an accused who is subjected to police interrogation. In my view, the majority today commits the same constitutional error as it did in *Commonwealth v. Franklin*, 438 Pa. 411, 265 A.2d 361 (1970). Because I continue to adhere to the views expressed in my dissenting opinion in *Franklin*, 438 Pa. at 419, 265 A.2d at 365, I must dissent.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court stated:

"If . . . [the defendant] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning."

384 U.S. at 444–445, 86 S.Ct. at 1612.

In this case, appellant clearly indicated that he wished to consult his attorney before speaking with the police. At that point, all interrogation should have ceased. But it did not. Detective Brown's inquiry, "do you want to tell us what took place?", constituted an attempt to elicit a statement from appellant, and was thus impermissible interrogation.

"There is no difference for constitutional purposes between questioning an accused outright and more subtly suggesting that he incriminate himself without being asked specific questions. . . . In our view, any question likely to or expected to elicit a confession constitutes 'interrogation' under *Miranda.*"

*Commonwealth v. Simala,* 434 Pa. 219, 227, 252 A.2d 575, 579 (1969).

The majority's assertion that appellant's statement was merely an exercise of his "right to change his mind" demonstrates a naive misunderstanding of the subtle pressures involved in custodial interrogation. The better rule has been articulated for the Court by Mr. Justice O'Brien: "For a waiver to be effective, the reversal of the defendant's position must have been initiated by him." *Commonwealth v. Mercier,* 451 Pa. 211, 216, 302 A.2d 337, 340 (1973). This case is "not a situation where a person in custody, after asserting his rights, indicated a desire to waive them without any further activity on the part of the police." Id. Rather, it was the prodding of Detective Brown that induced appellant to forego consultation with his attorney and make a formal statement, prodding that occurred after appellant had "indicate[d] . . . that he wishe[d] to consult with an attorney before speaking . . . ." *Miranda v. Arizona,* supra.

This impermissible conduct of the police, in my view, tainted the statement that resulted from it. That statement, elicited in violation of appellant's constitutional rights, should not have been admitted into evidence. Accordingly, I would reverse the judgment and grant appellant a new trial.