368 A.2d 1284

**COMMONWEALTH of Pennsylvania**

v.

**Walter WALKER, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 20, 1975.

Decided Jan. 28, 1977.

536

Joel Every, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Deborah E. Glass, Asst. Dist. Atty., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

MANDERINO, Justice. Following a nonjury trial, appellant, Walter Walker, was convicted of murder in the third degree and of possession of an instrument of crime. Post-verdict motions were denied, and concurrent sentences of not less than one nor more than two years on the possession charge, and not less than six nor more than twenty years on the murder conviction, were imposed. This appeal is from the murder conviction. No appeal was taken from the weapons offense conviction.

Prior to trial appellant had sought to suppress certain statements made by him to interrogating police officers. His motion to suppress was denied. The sole question raised on this appeal is whether these statements, given to police officers by appellant following his arrest, were made after a knowing and intelligent waiver of his right to remain silent and of his right to the assistance of an attorney, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

As observed in *Commonwealth v. Goodwin*, 460 Pa. 516 at 520–521, 333 A.2d 892 at 894 (1975):

> "The United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), stated that an individual under custodial interrogation, who has been informed properly of his privilege against self-incrimination and the right to counsel, may elect to waive these constitutional rights. However, the court emphasized that any waiver must be knowing, intelligent and voluntary."

■ To be valid, any alleged waiver of these constitutional rights must be the product of a free and uncoerced decision of the accused:

> "The ultimate test remains that which has been the only clearly established test in Anglo-American Courts for 200 years: the test of voluntariness. Is the con-

fession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne, and his capacity for self-determination critically impaired, the use of his confession offends due process. *Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). *The line of distinction is that at which governing self direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession."* (Emphasis added.)

*Culombe v. Connecticut,* 367 U.S. 568, at 602, 81 S.Ct. 1860, at 1879, 6 L.Ed.2d 1037, at 1057 (1961).

*See also Commonwealth v. Goodwin, supra,* and cases cited therein.

██ This Court has often stated that before an alleged waiver of constitutional rights will be declared valid, the prosecution must show by a preponderance of the evidence that the waiver was made knowingly and intelligently. See for example, *Commonwealth v. Goodwin,* 460 Pa. 516, 333 A.2d 892 (1975); *Commonwealth v. Ewell,* 456 Pa. 589, 319 A.2d 153 (1974); *Commonwealth v. Fogan,* 449 Pa. 552, 296 A.2d 755 (1972); *Commonwealth v. Barnette,* 445 Pa. 288, 285 A.2d 141 (1971); *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A.2d 426 (1968). When an accused challenges the validity of an alleged waiver of constitutional rights, the prosecution's duty becomes one of showing that the accused was aware of both the right, and of the risks of forfeiting such right, and that therefore any waiver of these rights was intelligent and knowing. *Commonwealth v. Barnette, supra; Spanbauer v. Burke,* 374 F.2d 67 (7 Cir. 1966), cert. denied 389 U.S. 861, 88 S.Ct. 111, 19 L.Ed.2d 127 (1967); ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Providing Defense Services, Sections 7.2, 7.3 (Approved Draft 1968). When the prosecution has prevailed, and

an alleged waiver of constitutional rights has been declared valid by the suppression court, we have stated that the duty of this Court on appeal is to consider only the evidence of the prosecution's witnesses, and so much of the evidence for the defense as fairly read in the context of the record as a whole remains uncontradicted, and based upon this review, to determine whether the record supports the factual findings of the suppression court and the legitimacy of the inferences and the legal conclusions drawn from those findings. *Commonwealth v. Goodwin, supra; Commonwealth v. Bundy,* 458 Pa. 240, 328 A.2d 517 (1974); *Commonwealth ex rel. Butler v. Rundle, supra.*

█ Furthermore, all the attending factors and circumstances must be considered and evaluated when determining the validity of an alleged waiver of constitutional rights. Such factors and circumstances include:

". . . [T]he duration, and the methods of interrogation; the conditions of detention, the manifest attitude of the police toward the defendant, the defendant's physical and psychological state and all other conditions present which may serve to drain one's powers of resistance to suggestion and undermine his self-determination. (Citations omitted.) . . . [W]hen the question of voluntariness passes beyond the realm of physical coercion and into degrees of psychological coercion, most careful attention will be afforded to any facts, circumstances or events tending to overbear the will of the accused."

*Commonwealth v. Starkes,* 461 Pa. 178, 184–185, 335 A. 2d 698, 701 (1975).

*See also Commonwealth v. Irvin,* 462 Pa. 383, 341 A.2d 132 (1975); *Commonwealth v. Goodwin, supra; Commonwealth v. Purvis,* 458 Pa. 359, 326 A.2d 369 (1974).

Our most recent statement of the considerations surrounding an accused's challenge to the validity of an al-

leged waiver of constitutional rights is found in *Commonwealth v. Bullard*, 465 Pa. 341, 350 A.2d 797 (1976). In *Bullard*, we agreed with appellant's contention that statements given by him to police after he was taken into custody should have been suppressed because the prosecution failed to prove that appellant Bullard knowingly, intelligently, and voluntarily waived his rights.

Having learned that he was being sought in connection with a homicide, appellant Bullard contacted, through an intermediary, a judge of the Philadelphia Municipal Court and explained the situation to him. The judge checked with police and learned that a warrant had been issued, and advised appellant to come to his chambers and surrender himself to police there. At the time of his surrender to police appellant did not have an attorney. Bullard was given over to the custody of the police with instructions by the judge that he was not to be interrogated until his family had obtained a lawyer. Bullard was taken to police headquarters at 3:00 p.m., and placed in an interrogation room, handcuffed to a metal chair which was bolted to the floor. Interrogation began after police detectives read standard *Miranda* warnings to Bullard and obtained from Bullard typical "yes" and "no" responses to their inquiries as to his desire to give a statement to police, and as to his wish to be represented by an attorney. At 11:40 p.m., Bullard signed an eight-page statement admitting his participation in the homicide. These facts, according to the *Bullard* court "indicate[d] an alarming disregard for appellant's constitutional rights." 465 Pa. at 344, 350 A.2d at 798. The facts and circumstances in the instant appeal show an equally egregious disregard for appellant Walker's constitutional rights. We therefore reverse the judgment of sentence, and remand for a new trial consistent with this opinion.

Responding to a radio call received at approximately 12:15 a.m., June 1, 1974, police officers proceeded to the

300 block of East Aramat Street, Philadelphia, Pennsylvania, where they found appellant lying on the roadway, having been knocked unconscious during a fight. The officers transported appellant to a nearby hospital where he was placed under arrest at approximately 1:15 a.m. At 1:30 a.m., a police detective attempted to talk to appellant who was lying handcuffed and unconscious on a hospital stretcher. After arousing appellant, the detective noticed the strong smell of alcohol on appellant's breath. Appellant refused to speak to the detective. Appellant was released from the hospital at 3:35 a.m., having been treated for facial bruises and alcoholic intoxication by a Dr. Todhunter. At the detective's request, Dr. Todhunter prepared a condition report upon appellant's release, briefly stating the time and purpose of appellant's admission, and concluding with the apparently misworded statement: "His condition is no [sic] satisfactory for travel." To clarify this statement, the police detective was permitted to testify at the suppression hearing that, based on his conversation with the doctor prior to appellant's release, the word "no" in the condition report should have read "now." Following his release appellant was brought directly to the homicide division for interrogation, and arrived there at 4:05 a.m. At 4:40 a.m., he was taken to the men's room. His condition at that time was described by the testifying detective as alert and talkative. This detective also testified, however, that appellant was subsequently handcuffed to a chair which was bolted to the floor, and that at that time appellant was attempting to sleep by leaning on a table also located in the interrogation room. According to this detective, appellant, in an apparently groggy state slumped over against the table in such a manner as to cause it to slide away from the rigidly bolted chair on which he was sitting. At this time appellant also had a badly swollen left eye. *Miranda* warnings were given, and interrogation began at 5:30 a.m. In response to the

standard *Miranda* warnings appellant indicated his understanding of these rights, and his desire not to have counsel present, in one word, "yes" and "no" responses. From 5:30 a.m., until 6:40 a.m., in response to the police questioning, appellant gave the statement in question, read it out loud, and signed each of its four pages. The series of questions and answers was handwritten by the interrogating officer. At the time, appellant was twenty-three years old, had a seventh grade education, and was a poor reader.

In *Commonwealth v. Bullard,* the record showed that appellant Bullard expressed a clear desire not to be questioned until counsel was obtained for him. In the instant case, the testifying police officer stated that in response to his initial questioning at the hospital, appellant clearly stated his desire not to answer police questions. In *Bullard* appellant's desire not to answer police questions was conveyed to the police through certain intermediaries. In the instant case appellant stated his desires directly to the interrogating officer involved, and the fact that he did not have the wherewithal to surrender himself to police in the presence of a judge, or did not have the presence of mind to request the assistance of an attorney at the same time he conveyed his desire not to speak, in no way derogates from his expression of a desire to exercise his constitutional right to remain silent. As stated by the *Miranda* court,

"[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. (Footnote omitted.) *At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise."* (Emphasis added.)

384 U.S. 436, 473–474, 86 S.Ct. 1602, 1627–1628, 16 L. Ed.2d 694, 723 (1966).

In *Bullard*, the prosecution contended that appellant indicated that he wanted to give his statement to the police after he was taken to the homicide unit interrogation room. The basis for this contention that appellant changed his mind inside the homicide division was the series of one word "yes" and "no" responses given by appellant to the *Miranda* warnings read to him by the interrogating officers. The *Bullard* court found this evidence insufficient to sustain the waiver asserted by the prosecution. As in *Bullard*, the prosecution here contends that appellant's waiver of his constitutional rights, was voluntary, knowing, and intelligent because appellant Walker gave the appropriate "yes", "no" responses to the standard *Miranda* warnings. As we found in *Bullard, supra,* we find this insufficient to sustain the waiver asserted by the prosecution. Also as in *Bullard*, we cannot infer a valid waiver of constitutional rights from the fact that the appellant ultimately answered questions put to him by interrogating officers. "The Commonwealth must show not merely that appellant acquiesced in the face of interrogation but also that they 'scrupulously honored' appellant's assertion of his rights." *Commonwealth v. Bullard, supra,* 465 Pa. at 348, 350 A. 2d at 800.

The facts in the instant record indicate that appellant Walker was in a condition considerably more susceptible to police intimidation and psychological coercion than was Bullard. Although he apparently was in great fear of the police, Bullard, according to the record in that case, was in no way affected by adverse physical conditions at the time of his arrest. The record in the instant appeal, however, shows that appellant Walker was injured at least seriously enough to require hospital treatment; had been drinking heavily enough that the odor of alcohol remained on his breath several hours after the incident leading to his arrest; had been knocked unconscious less than six hours prior to the commencement of

the interrogation that led to the statement in question; had, at the time of the interrogation, a bruised and swollen eye; and was fatigued to the point of falling asleep against a table while handcuffed to a chair bolted to the floor of the interrogation room. As in *Bullard,* we conclude that mere "yes," "no" response to *Miranda* warnings coupled with the answering of questions put to him by police interrogators does not, in the circumstances of the instant case, constitute the "free and rational choice" described in *Miranda, supra,* 384 U.S. at 465, 86 S.Ct. at 1623, 1624, 16 L.Ed.2d at 718.

The requirement in *Miranda* that "interrogation must cease" when an individual indicates in any manner that he wishes to remain silent has not been changed by *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). The issue in *Mosley* was whether the police were permitted to question the accused about a murder two hours after the accused exercised, following *Miranda* warnings, his right to remain silent when being questioned *about robberies completely unrelated* to the murder. *Mosley* concluded that the police scrupulously honored the accused's exercise of his right to remain silent *about the robberies,* even though he was later questioned about an *unrelated murder* at which time he did not exercise his right to remain silent. In effect, the accused exercised his right to remain silent about the robberies, but never exercised his right to remain silent about the unrelated murder.

The concurring opinion of Mr. Justice Eagen interprets *Mosley* as permitting the resumption of questioning *about the same crime* after the accused exercises the right to remain silent about that crime. The quotation appearing in the concurring opinion of Mr. Justice Eagen in support of that interpretation is not complete however. An important part of the last sentence is omit-

ted.  The entire paragraph as it appears in *Mosley* is as follows:

"This is not a case, therefore, where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind.  In contrast to such practices, the police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, *and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation.*"  (Emphasis added.)

*Id*. at 105, 96 S.Ct. at 327, 46 L.Ed.2d at 322.

The italicized portion in the quotation provided the rationale for the decision in *Mosley*.  *See* concurring opinion of Mr. Justice White in *Mosley*, 423 U.S. at 107, 96 S.Ct. at 328, 46 L.Ed.2d at 323.

The crucial distinction between the facts of this case and those of *Mosley* is that in *Mosley*, once the accused exercised his "right to cut off questioning," he was never further questioned *about the same crime*.  For this reason, the *Mosley* court concluded that the accused's rights had been "scrupulously honored" by the police.  In the instant appeal, however, the subsequent interrogation by the police concerned *the same crime* about which Walker had previously refused to talk.  As in *Bullard*, the police here failed to "scrupulously honor" appellant's right to remain silent about the crime for which he had been arrested and was now being questioned.  In fact, the evidence presented at the suppression hearing revealed a callous disregard of that right.

Judgment of sentence reversed and a new trial granted.

EAGEN, J., filed a concurring opinion in which JONES, C. J., and O'BRIEN and POMEROY, JJ., joined.

NIX, J., concurs in the result.

EAGEN, Justice, concurring.

I agree that the evidence of Walker's custodial incriminating statement should have been suppressed and that use of the evidence at trial constitutes reversible error. I do so because in my view the Commonwealth failed to meet its burden of showing there was a voluntary waiver of constitutional rights before this evidence was obtained.

The record shows that four hours elapsed between Walker's initial exercise and subsequent waiver of his right to remain silent and the location and circumstances of custody were changed significantly. Furthermore, no evidence exists to show the police in any manner coerced Walker into waiving his rights. But the record also shows Walker was intoxicated and in poor physical condition and fails to show the effects of the intoxication and poor physical condition had dissipated at the time Walker waived his rights. Thus, because of the intoxication and physical condition, I must conclude that the Commonwealth failed to show a voluntary waiver.

But, absent these two factors, I believe that *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1976), would be controlling instantly because the police did honor Walker's assertion of his right to remain silent and merely asking him some four hours later, under the circumstances disclosed, if he still wished to exercise his right to remain silent does not amount to an attempt to coerce, nor does it suggest a disrespect for or dishonor of Walker's right to remain silent. Thus, much of what

was said in *Michigan v. Mosley,* supra at 105, 96 S.Ct. at 327, is applicable here, particularly:

> "This is not a case . . . where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind. In contrast to such practices, the police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings . . . ."

Thus, had the Commonwealth here adequately met its burden of showing that the effects of intoxication and Walker's overall physical condition had worn off, I believe the change in circumstances, the absence of any attempt to coerce, and the honoring of the original desire to remain silent by not questioning Walker would have been sufficient to show an effective waiver when coupled with fresh warnings, appropriate responses, and followed closely by a statement. See, *Miranda v. Arizona,* 384 U. S. 436, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966).

It is true that in *Michigan v. Mosley,* supra, the waiver which followed the prior exercise of the right to remain silent, was made with regard to a different crime. But, how that fact affects an otherwise knowing, intelligent, and voluntary waiver is not pointed out in Mr. Justice Manderino's opinion. Further, I do not believe that factor was essential to the decision in *Michigan v. Mosley,* supra.

This Court has held that a person may effectively waive his right to counsel after having previously exercised it, and the waiver was considered effective without regard to the subject matter of the crime. Indeed, where we so held the waiver of counsel followed the exercise of the right to counsel with regard to the same crime. *Commonwealth v. Bullock,* 459 Pa. 243, 328 A.2d 493

(1974); *Commonwealth v. Hawkins,* 448 Pa. 206, 292 A. 2d 302 (1972). *A fortiori,* given a significant change in circumstances, an accused may effectively waive his right to remain silent following a prior exercise of that right even if the questioning involves the same crime.

I would add that the opinion of Mr. Justice Manderino needlessly reaches the question of whether Walker's waiver could as a matter of law, be effective, because under the circumstances presented it was, in fact, not effective. Thus, the more difficult legal question could very easily be avoided.

Further, I do not join in Mr. Justice Manderino's opinion for other reasons:

First, it relies heavily on *Commonwealth v. Bullard,* 465 Pa. 341, 350 A.2d 797 (1976). I dissented in *Bullard,* supra, because the facts of that case did not support the position that Bullard ever exercised his right to remain silent. The facts of this case are distinguishable because here Walker clearly did initially express a desire to remain silent. Thus, in my view, *Bullard,* supra is inapposite.

Second, even assuming Bullard did initially express a desire to remain silent, both *Bullard,* supra, and today's decision imply, if they do not in fact state, that "yes" and "no" responses to standard warnings present a situation which requires this Court to analyze the issue as if the accused never expressed a willingness to waive his rights. See, *Bullard,* supra at 347–349, 350 A.2d at 800; Opinion of the Court, 470 Pa. ——, ——, 368 A.2d 1284, 1289 (1977). In doing so, *Bullard,* supra, and today's decision imply standard warnings and "yes" and "no" responses are not sufficient. For example, *Bullard,* supra at 347–349, 350 A.2d at 800, referred to standard warnings as "pro forma" and today's decision refers to "yes" and "no" responses as "mere." Further, both decisions refer to "yes" and "no" responses to standard warnings as mere "acquiescence," that is, as if the accused merely

"acquiesced in the face of interrogation." Neither *Bullard,* supra, nor this case present silent records and the propriety of treating standard warnings followed by "yes" and "no" responses as acquiescence or silence is not only a questionable method of analysis since it defies logic, experience, and ordinary common sense to say that a verbal expression just because it is short is silence, but also since such a position will lead to an erosion of the protections afforded an accused by *Miranda.*

If standard warnings and "yes" and "no" responses are to be treated as silent acquiescence, then this Court must be demanding more of both the police and the accused. Are the police to depart from standard warnings? Are the police to request an accused to say more than "yes" and "no" in responding to warnings? In my view, standard warnings are the most desirable form of warnings and "yes" and "no" responses are certainly adequate and acceptable responses.

If we require more than standard warnings by the police, then the danger that an accused will be misled either deliberately or inadvertently will be seriously increased. If we require more than definite and precise responses, such as "yes" and "no", then we will be forcing the police to interpret what more protracted responses are given. Also, our courts will then be forced to interpret those responses in each and every case.

Both standard warnings and "yes" and "no" responses are the most desirable form of warnings and responses in most instances. Use of standard warnings avoids any danger that a police officer, who is not necessarily learned in the law, will mislead an accused. Moreover, they inform an accused concisely and realistically of alternatives and possible consequences. In terms of predictability and definiteness, "yes" and "no" responses serve the accused, the police, and the courts quite well because they do not admit of misinterpretation.

While requiring more than standard warnings and "yes" and "no" responses may appear to advance the rights of an accused by limiting the manner in which he may effectively waive his rights, in reality, such a position erodes the protections *Miranda* provides an accused by departing from easily understood warnings and responses into vague explanations of one's rights by the police and into responses which are less definite and clear.

JONES, C. J., and O'BRIEN and POMEROY, JJ., join in this opinion.