## Commonwealth v. Fleissner

*John Flannery,* for Commonwealth.
*Jonathan Miller* and *Bruce R. Friedman,* for defendants.

DiNUBILE, JR., *J.,* November 23, 1981 — Defendants were arrested and charged with burglary, theft, trespass and criminal conspiracy. Motions to suppress physical evidence were filed by both defendants as well as a motion to suppress a statement which was filed only by defendant Fleissner. A hearing on these motions was heard by this court on October 26, 1981 and held under advisement until November 23, 1981, at which time the motions were denied. Trial without jury took place immediately after the denial of the motions to suppress with the following results: Defendant Fleissner was found guilty of trespass, and conspiracy and acquitted of burglary and theft. Defendant Ward was found guilty of trespass and conspiracy and acquitted of burglary and theft. Oral post trial motions were made (raising the same issues as contained in the motions to suppress) and denied. Defendant Fleissner was sentenced to 3 years probation on the trespass and conspiracy bills to run concurrently and defendant Ward was sentenced to

one year concurrent probation on both the trespass and conspiracy charges. Conditions of the probation for both defendants is that they participate in vocational and job training programs.

Defendants' post trial motions raised the following issues: (1) There did not exist reasonable suspicion to stop and detain defendants. Thus, the police officer's observation of the powder on the clothing of the defendants must be suppressed since it (the view) was the product of an illegal detention or arrest; (2) The officer did not have a right to detain the defendants for some 15 to 20 minutes until other officers returned from their investigation of the burglarized premises; (3) The statement made by defendant Fleissner while in police custody resulted from an illegal interrogation as well as being the product of an illegal arrest. These motions were denied for the following reasons: The officer's observation of the powder on defendants' clothing is admissible into evidence. There existed reasonable suspicion to stop and detain the two defendants and therefore the officer had a right to be in the particular position to observe the powder in plain view. The officer had a right to detain defendants for some 15 to 20 minutes until the other officers returned from their investigation and substantiated the fact that the premises had been burglarized. This brief detention constituted a valid intermediate response until it was determined that there existed probable cause for the arrest. The statement made by defendant Fleissner while in police custody was admissible and not the product of an illegal interrogation or an illegal arrest.

The facts upon which this decision is based as contained in the trial court's findings are these: Philadelphia Police Officer Malone was on duty on May 4, 1981 at approximately 9:23 p.m. when he

received information that a silent alarm had been sounded at the Pendot Building located at Southampton Rd. and Indiana Ave. in Northeast Philadelphia. The officer arrived at the scene approximately two minutes later and observed two defendants walking some 20 to 25 yards away from the building entrance. There were open fields around the Pendot Building with the closest structure being a factory under construction some 300 yards away. The officer told defendants to stop, approached them and observed white powder on both their arms and knees. Only defendant Fleissner could produce any kind of identification. The officer then placed both defendants in the patrol car and proceeded to the rear of the building where he met two other officers who had arrived on the scene. Officer Malone returned to the front of the building where he noticed a basement window at eye level had been broken out. The two other officers entered the building through the broken basement window and returned a short time later with the same type of white powder on their hands and knees as was observed on defendants. They told Officer Malone that the white substance was found on the sill inside the broken window. The officer had previously checked the building between 6:30 and 7:00 p.m. earlier that evening and the window was intact. Officer Malone then officially arrested both defendants for burglary, theft, trespass and conspiracy. Approximately 20 minutes had elapsed from the time he had first detained them and until the time he observed his fellow officers with the white powder on their clothing. Defendants were transported to Northeast Detective Division where defendant Fleissner, in particular, was interrogated by a police detective. The detective advised the defendant of his constitu-

tional rights pursuant to Miranda at about 11:30 p.m. and he, Fleissner, declined to give a statement. Approximately two hours later (1:30 a.m.) the detective played back a recording of the burglary of the Pendot Building to Fleissner. After playing the recording and prior to asking defendant any questions, the detective once again advised him of his constitutional rights. Defendant changed his mind, waived his rights and gave a written statement which was the subject matter of the motion to suppress.

The first issue raised by defendants is that the stop constituted an arrest which lacked probable cause and therefore the officer's observation of their clothing must be suppressed. Without discussing the issue as to whether the officer's mere view of the clothing properly could be suppressed even if the detention were invalid, the officer's observation can be admitted into evidence on the grounds that the stop was valid.

It is clear that Officer Malone had reasonable suspicion to believe criminal activity was afoot and that defendants were involved when he stopped them for investigation. The courts consistently have held that reasonable grounds to arrest need not exist at this particular time and all that is necessary is the "articulable suspicion criteria." Com. v. Dennis, 289 Pa. Superior Ct. 305, 433 A. 2d 79 (1981); Com. v. Williams, 287 Pa. Superior Ct. 19, 429 A. 2d 698 (1981); Com. v. Stewart, 257 Pa. Superior Ct. 334, 390 A. 2d 1264 (1978).

". . . the police need not meet the strict probable cause standard to justify a brief stop of a suspicious individual . . . a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possi-

bly criminal behavior even though there is no probable cause to make an arrest. . . . The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. . . . A brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." Com. v. Stewart, 257 Pa. Superior Ct. 338-339, 390 A. 2d 1266 (1978).

The officer had received information of a silent alarm at the Pendot Building. Within two minutes of that time he arrived on the scene and saw two defendants approximately 20 to 25 yards away from the entrance of the building. There were no other buildings in the area. Open fields surround the Pendot premises with the closest structure being a factory under construction some 300 yards away. Upon questioning both defendants, only Fleissner could produce identification. Certainly under these circumstances, the officer had a right to stop and detain them for a short period of time. Since the officer had a definite right to detain and question defendants, his observations of the condition of their clothing in plain view are admissible into evidence: Com. v. Murray, 460 Pa. 53, 331 A. 2d 414 (1975); Com. v. Myers, 239 Pa. Superior Ct. 459, 361 A. 2d 884 (1976); Com. v. Ferraro, 237 Pa. Superior Ct. 268, 352 A. 2d 548 (1975).

The next issue presented by the defense is: Even assuming there existed a reasonable suspicion to

detain, the police had no right to keep defendants in custody until they obtained reasonable grounds to arrest. In this case, there is no doubt that reasonable grounds to arrest existed when the two policemen returned with similar white powder on their clothing and the arresting officer learned that they had obtained this white substance after they climbed in through the broken window at the front of the Pendot Building. Officer Malone had investigated the building at approximately 6:30 or 7:00 that same evening and the window had been intact. It took approximately 20 minutes from the time of the detention of defendants until these facts had been learned by the arresting officer. The time period of detention here was permissible. See Com. v. Johnson, 275 Pa. Superior Ct. 343, 418 A. 2d 754 (1980), approximately 30 minutes elapsed from detention to verification of probable cause; Com. v. Galadyna, 248 Pa. Superior Ct. 226, 375 A. 2d 69 (1977); Com. v. Benson, 239 Pa. Superior Ct. 100, 361 A. 2d 695 (1976); Com. v. Lovette, 271 Pa. Superior Ct. 250, 413 A. 2d 390 (1979); Com. v. Lumb, 288 Pa. Superior Ct. 11, 430 A. 2d 1188 (1981). All these cases sanction the so-called "Intermediate Response" to detain a party until certain facts can be substantiated which would create reasonable grounds to arrest.

"Intermediate responses previously have been approved by the courts of this Commonwealth. . . . The officer in this case was reluctant to let appellant free to leave. . . . At the same time, the officer was reluctant to arrest appellant on the basis of the information known to him at this time. Rather than force the officer to choose between such opposite responses, this court sanctions the use of an intermediate response. . . ." Com. v. Lovette, 271 Pa. Superior Ct. 254, 413 A. 2d 390, 392 (1979).

"Probable cause to hold a suspect in custody while facts are checked is present where, 'the facts and circumstances within the knowledge of the officer, or of which he has reasonable trustworthy information, are sufficient to warrant a man of reasonable caution in believing the suspect has committed or is committing a crime.' . . . All circumstances surrounding the apprehension should be taken into account in determining whether probable cause existed. . . ." Com. v. Johnson, 275 Pa. Superior Ct. 349, 418 A. 2d 754, 757 (1980).

Since the detention and arrest are valid, any statement of defendant Fleissner flowing from the valid arrest is admissible under this theory.

Defendant's final argument is: Notwithstanding the validity of the arrest, the statement taken from Fleissner should be suppressed because there was further interrogation after he had exercised his rights and declined to make a statement. The defense cites the case of Com. v. Mercier, 451 Pa. 211, 302 A. 2d 337 (1973) which held that if a defendant elects not to give a statement by exercising his rights under Miranda, then the police have no right to continue to interview him unless there is a clear indication of a change of mind and explicit waiver of these rights. In Mercier, defendant, after declining to make a statement, was presented with a confession from a co-defendant implicating him. The court held that the confrontation involving the co-defendant's statement constituted "interrogation" which was improper. The court suppressed the statement which flowed from the illegal interrogation. Once defendant refuses to give a statement all further questioning must cease. It must be noted that this is a 1973 decision representing a 4-3 opinion from the Supreme Court. Therefore, the application of this case should be limited strictly to its

facts. The instant case differs from Mercier on two substantial grounds. First, defendant was not confronted with either a co-defendant himself who personally implicated him or any statement of a co-defendant. A tape of the burglary itself merely was played back to defendant. Second, immediately after the playing back of the tape, defendant was readvised of his Miranda rights and decided to make a statement. Since it is abundantly clear that a defendant may change his mind after first exercising his Miranda rights, the statement in this case is valid. See Com. v. Pfaff, 233 Pa. Superior Ct. 153, 335 A. 2d 751 (1975); Com. v. Nahodil, 462 Pa. 301, 341 A. 2d 91 (1975); Com. v. Bullock, 459 Pa. 243, 328 A. 2d 493 (1974). See also Com. v. McFadden, 470 Pa. 604, 369 A. 2d 1156 (1977).