459 A.2d 1280

**COMMONWEALTH of Pennsylvania**

v.

**Haywood WILKERSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 14, 1982.

Filed April 29, 1983.

Petition for Allowance of Appeal Denied Aug. 23, 1983.

Cavanaugh, J., concurred in result.

382

Marilyn C. Zilli, Assistant Public Defender, Harrisburg, for appellant.

William A. Behe, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before CAVANAUGH, WICKERSHAM and MONTEMURO, JJ.

WICKERSHAM, Judge:

This procedurally tangled case arises out of Haywood Wilkerson's challenge to his conviction of voluntary manslaughter and other offenses. On March 4, 1978, Wilkerson was arrested and charged with criminal homicide, aggravated assault, attempted murder and unlawful carrying of a firearm. The case against Wilkerson was tried to the Honorable William W. Caldwell and a jury; he was found guilty of voluntary manslaughter, carrying a firearm without a license and aggravated assault.

No post-trial motions were filed on Wilkerson's behalf and on August 24, 1978, Wilkerson was sentenced to an aggregate term of ten to twenty years imprisonment. Wilkerson filed a *pro se* petition for modification of sentence *nunc pro tunc;* this petition was denied on Septem-

ber 21, 1978. Next, Wilkerson filed a *pro se* petition under the Post Conviction Hearing Act. Counsel was appointed for Wilkerson and counsel's amended PCHA petition was denied without a hearing. From this decision an appeal was taken to the Pennsylvania Supreme Court, the case is *Commonwealth v. Wilkerson*, 490 Pa. 296, 416 A.2d 477 (1980).

In an opinion by then Chief Justice Eagen the court reversed and remanded. The court noted that Wilkerson's claim for post conviction relief was based on alleged ineffectiveness of trial counsel; the allegations of ineffectiveness included counsel's failure to file post-verdict motions and an appeal. The denial of PCHA relief was reversed because trial counsel failed to protect Wilkerson's appeal rights and because Wilkerson's allegations of ineffectiveness required a hearing.

On November 25, 1980, Wilkerson's *nunc pro tunc* motions for a new trial and in arrest of judgment were filed. A hearing on post-trial motions was held on February 5, 1981 before Judge Caldwell. Testimony was taken at the hearing from trial counsel and Wilkerson concerning counsel's conduct of the trial and post-trial proceedings.

Judge Caldwell denied Wilkerson's post-trial motions on March 26, 1981 and reinstated Wilkerson's original sentence. Wilkerson filed a timely notice of appeal.

The facts underlying Wilkerson's convictions may be summarized as follows. At trial, an officer of the Harrisburg Police Department testified that on March 4, 1978 he responded to a call and found two victims of a shooting; the victims were Robert Bruton and Neil Bruton. Haywood Wilkerson was taken into custody and given *Miranda* warnings. Despite being warned of his right to remain silent, Wilkerson told the police that he shot the two victims after he had been struck in the face. The officer further testified that he went to the hospital with the victims and that the victims had no weapons of any kind. Neil Bruton died at the hospital although Robert Bruton survived his wounds.

According to the testimony of an eyewitness to the events, Haywood Wilkerson shot the Brutons in the course of an argument over a small debt Wilkerson owed Robert Bruton. The witness stated that Wilkerson turned, walked four feet away, turned around again and fired a gun at the Brutons. Another witness testified that Robert Bruton cursed Wilkerson and slapped him in the face twice. Robert Bruton said that he slapped Wilkerson once.

Haywood Wilkerson took the stand and gave evidence on his own behalf. Wilkerson told the jury that he shot the Brutons after Robert Bruton slapped him twice. Wilkerson believed that the Brutons were going to strike him again. Another eyewitness to the events said that the three men (Wilkerson and the Brutons) appeared to be fighting.

All of Wilkerson's contentions on this appeal are couched in terms of the ineffectiveness of trial counsel. Accordingly, we will reiterate the standard of review employed in ineffectiveness cases before addressing Wilkerson's specific claims. The applicable standard of review was recently summarized in *Commonwealth v. McKnight*, 311 Pa.Super. 460, 457 A.2d 1272 (1983):

This court, in determining whether a criminal defendant was afforded effective assistance of counsel, will make an independent review of the record, *Commonwealth v. Stadler*, 262 Pa.Super. 166, 396 A.2d 697 (1978), and an examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967); *Commonwealth v. Gray*, 297 Pa.Super. 123, 443 A.2d 330 (1982). Counsel will be deemed effective if this court determines that the course of action chosen by counsel had some reasonable basis designed to effectuate his client's interest. *Commonwealth ex rel. Washington v. Maroney, supra; Commonwealth v. Johnson*, 280 Pa.Super. 309, 421 A.2d 737 (1980). However, it is only when the claim is of arguable merit that we must make an inquiry into the basis for

counsel's decision not to pursue the matter. *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977). *Id.,* 311 Pa.Superior at 464–65, 457 A.2d at 1275.

With the above stated principles in mind we consider whether Wilkerson was denied effective assistance of counsel because trial counsel did not file a motion to suppress statements Wilkerson made to the police. Wilkerson argues that any waiver of *Miranda* rights was invalid and that trial counsel should have filed a suppression motion.

At the time of Wilkerson's trial the rule on *Miranda* waiver was explained by Justice Manderino's plurality opinion in *Commonwealth v. Walker,* 470 Pa. 534, 368 A.2d 1284 (1977). Under the guidance provided by *Walker* the question was whether a defendant's waiver of *Miranda* rights was a product of a free and uncoerced decision and whether the waiver was knowing and intelligent. Wilkerson now contends that no testimony was taken about the circumstances surrounding his statements and that he was agitated and possibly intoxicated when the statements were made.

A review of the trial transcript indicates that there was testimony as to Wilkerson's condition when he was given his *Miranda* rights. A Harrisburg police officer testified that Wilkerson was apprehended walking away from the crime scene and ordered into a police car where his rights were explained to him. Wilkerson then said that he had shot the victims and that he would shoot again if he were hit. The officer also stated that Wilkerson was excited and angry but in control of his faculties. Wilkerson himself testified that he was not drunk on the morning of the crime.

■ Examination of the record shows that Wilkerson freely spoke to the police. There is no indication that the police overbore Wilkerson's will: a police officer testified that Wilkerson was cooperative from the moment the police approached him and that Wilkerson admitted that he was the man the police were looking for. Further, Wilkerson's trial counsel testified that Wilkerson told him that he under-

stood what the policeman was saying to him and that he spoke anyway.

Our conclusion that trial counsel was not ineffective for failing to file a suppression motion is strengthened by the fact that at trial, Wilkerson himself testified to essentially the same facts he told the police. Wilkerson told the police officers that he shot the Brutons after one of them struck him; Wilkerson told the jury that he shot the Brutons after one of them struck him. It has been held that when a defendant repeats prior statements at his trial, any error is rendered harmless beyond a reasonable doubt. *See e.g. Commonwealth v. Saunders*, 459 Pa. 677, 331 A.2d 193 (1975); *Commonwealth v. Rose*, 265 Pa.Super. 159, 401 A.2d 1148 (1979).

■ Wilkerson next argues that trial counsel was ineffective for failing to move for sequestration of the Commonwealth's witnesses. Without citing authority, Wilkerson asserts that trial counsel had an obligation to move for sequestration, which should be requested whenever there is the possibility that witnesses will adjust their testimony to ensure consistency.

We will not hold that counsel is automatically ineffective in not moving for sequestration. Trial counsel testified that he did in fact consider such a motion but decided, after listening to the witnesses at a preliminary hearing, that they had not nor would they mold their testimony. Trial counsel had a transcript of the preliminary hearing available at trial and was prepared to impeach the witnesses if they changed their story. Moreover, the witnesses confirmed Wilkerson's version of events, i.e., that Wilkerson shot the Brutons only after being struck. A motion for sequestration was not necessary in this case and trial counsel was not ineffective for failing to make such a motion.

■ Wilkerson contends that his trial counsel was ineffective for failing to object to mention of the fact that he had been in jail just before the shootings. Wilkerson concedes

that the Commonwealth did not intentionally elicit the testimony about his incarceration and that the initial reference to incarceration was only arguably prejudicial. Trial counsel for Wilkerson did not object to the remark until later in the trial, when a cautionary instruction was given to the jury.

Under the circumstances of this case, trial counsel was not ineffective. Wilkerson admits that the remark was only arguably prejudicial and was elicited inadvertently. An appropriate instruction was given to the jury and Wilkerson explained that he was not in jail for a violent crime. Moreover, the evidence against Wilkerson was overwhelming and he admitted that he shot both of the victims. The mere mention that Wilkerson had been in jail for a nonviolent offense could not possibly have prejudiced the jury in this case.

■ Wilkerson argues that trial counsel should have investigated whether the police aggravated Robert Bruton's injuries by moving him before an ambulance came to the scene. There is absolutely no merit to this contention.

■ Further, Wilkerson asserts that trial counsel gave ineffective assistance by waiving a charge on involuntary manslaughter. The trial court offered to charge the jury on involuntary manslaughter and counsel declined the charge. Counsel later explained that he felt the case was one for acquittal by reason of self-defense and that he did not want to get a compromise verdict. We cannot say that this strategy had no reasonable grounds in protecting Wilkerson's interest. If the jury found that Wilkerson acted in self-defense, he would have been acquitted altogether, certainly a more desirable outcome to him than a conviction of involuntary manslaughter.

■ Wilkerson believes that his trial counsel was ineffective for failing to object to the court's statement to the jury that there was no dispute that Wilkerson was illegally carrying a firearm and that Bruton suffered a serious bodily injury. We have read the court's thoughtful and

thorough charge to the jury and believe that there was no error in the instructions given.

The learned trial judge did not, as Wilkerson suggests, usurp the fact-finding function of the jury. Wilkerson did not, in fact, argue that he was entitled to carry a firearm on a public street in Harrisburg. Nor did Wilkerson argue that the injuries suffered by Robert Bruton were trivial; he could not very well make such an argument when his defense was that he shot Robert Bruton to save his own life. On this point the trial judge said "I don't think it would be seriously disputed by the defense that the injuries suffered by Mr. Bruton were serious bodily injuries, *although, as I emphasize, this is for you to determine.*" Record, 7/26/78 at 94 (emphasis added). There was no error in this charge, thus, counsel was not obliged to object to it.

■ Wilkerson believes that counsel should have objected to the court's instruction to the jury on the firearms charge. The record amply demonstrates that Wilkerson was carrying a concealed weapon for which he had no permit. In any event, the firearms charge was certainly the least of Wilkerson's legal difficulties, because Wilkerson was also charged with murder and attempted murder. Counsel could, therefore, endeavor to protect his credibility with the jury, and concentrate the court's attention, by objecting only to parts of the charge directly bearing on the more serious offenses with which his client was charged.

■ Finally, Wilkerson argues that counsel was ineffective for failing to request a presentence report. It is not *per se* ineffectiveness for counsel to fail to request a presentence report where, as here, the court is familiar with the defendant and heard evidence which might tend to mitigate the offense, i.e., that Wilkerson had had some drinks before the incident and that Wilkerson did not start the argument which led to the fatal shooting.

Order affirmed.

CAVANAUGH, J., concurs in the result.