401 A.2d 1148

**COMMONWEALTH of Pennsylvania**

v.

**Randolph ROSE, Appellant.**

Superior Court of Pennsylvania.

Submitted June 23, 1977.

Decided April 12, 1979.

160

162

John W. Packel, Assistant Public Defender, Chief, Appeals Division, Philadelphia, for appellant.

Steven H. Goldblatt, Assistant District Attorney, Chief, Appeals Division, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, President Judge:

A jury in Philadelphia County found appellant guilty of, *inter alia,* robbery,[1] aggravated assault,[2] and possession of a prohibited offensive weapon [3] concerning two incidents that occurred on the morning of August 8, 1975. Appellant's lengthy pretrial motions were denied. This appeal followed. We affirm in part and reverse in part.

At 12:30 A.M. on August 8, 1975, Robert Edwards was robbed and shot in the back. At approximately 1:20 A.M. that same morning, the body of Russell Leary was found with a fatal gunshot wound in the back and his empty wallet

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S.A. § 3701.

2. Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S.A. § 2702.

3. Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S.A. § 908.

lying beside him. At or about the time Leary died,[4] appellant met a Gary Crosby[5] and together they spent several hours drinking coffee at a restaurant. When Crosby indicated he wanted to leave, appellant accompanied him to his subway stop where appellant robbed and shot Crosby in the back of the neck at about 5:10 A.M. Crosby remained conscious and was able to give police an accurate description of appellant while they took him to the hospital. Appellant and another male were picked up shortly thereafter in the vicinity of the crime and transported to the hospital where Crosby was being treated. Crosby made a positive identification of appellant as being the person with whom he had drunk coffee the evening before, and who subsequently robbed and shot him.

Appellant was taken to the Central Detective Division at approximately 5:45 A.M. Upon arriving at the Division, appellant was read the *Miranda* warning and indicated he would remain silent. The police found a small handgun on appellant and no interrogation took place at that time. At approximately 8:25 A.M., appellant was transported to the Police Administration Building to await arraignment. It was about this time that the police began receiving reports of the Edwards and Leary incidents that were similar to the Crosby robbery and shooting. When the ballistics report was returned at approximately 11:45 A.M., it indicated the bullet found on Leary's body matched the pistol found on appellant at the time of his arrest. When confronted with this new evidence, appellant waived his *Miranda* rights and

4. The Supreme Court of Pennsylvania recently affirmed appellant's conviction for murder of the second degree and robbery involved in the Leary incident. *Commonwealth v. Rose*, 483 Pa. 382, 396 A.2d 1221 (1979). The Supreme Court discussed some of the identical issues presented in appellant's brief before us now. We reach the same result as the Supreme Court on the duplicate issues.

5. There is a discrepancy in the spelling of Mr. Crosby's name as being either "Crosley" or "Crosby." The former is used in the original record, the latter is used in the Notes of Testimony and briefs of the parties. We will use the latter spelling throughout this opinion. Our Supreme Court used the "Crosley" spelling throughout its opinion in reference to the same person. *Commonwealth v. Rose*, 483 Pa. at 385, 396 A.2d at 1222.

confessed to the Edwards and Leary shootings. The administrative procedures, interrogations, and the taking and signing of appellant's statements took approximately six hours. Appellant was arraigned at 5:50 P.M.

At the pretrial suppression hearing, appellant's counsel moved for the suppression of all statements made by appellant, alleging an unnecessary delay in appellant's arraignment. All pretrial suppression motions were denied by Judge Shoyer. Appellant was subsequently convicted for the Leary murder in a non-jury trial. The Edwards and Crosby incidents were consolidated, and the trial on these charges took place resulting in appellant's conviction. It is from this latter trial appellant appeals.

Appellant raises nine issues in his voluminous brief which greatly exceeds the maximum number of pages permissible for briefs under our rules. Pa.R.A.P. 2135.[6] We will comment on each issue.

## I.

First appellant argues that the lower court erred in denying appellant's motion to suppress statements made during the delay between arrest and arraignment. If the delay was unnecessary pursuant to Pa.R.Cr.P. 130, all evidence obtained during the delay and reasonably related to it must be suppressed. *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972).[7] However, we agree with the findings

6. Appellant's brief also violates some of our other rules, e. g., Pa.R. A.P. 2115, and the appeal could have been quashed pursuant to Pa.R.A.P. 2101. We did not take such drastic action in this appeal due to the seriousness of the issues involved. However, such blatant violations of our rules, without leave of court, will not be tolerated in the future.

7. The rule set forth in *Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977) is that if an accused is not arraigned within six hours of his arrest, any statement made by him before arraignment shall not be admissible. However the rule affects arrests after May 16, 1977. The arrest in the case before us occurred on August 8, 1975 and does not fall within the *Davenport* proscription.

of fact and conclusions of law drawn by Judge Shoyer,[8] who presided at the suppression hearing, in concluding that the delay in this case was not an "unnecessary delay." There are necessary delays in every criminal case during which administrative details like booking, fingerprinting and some preliminary investigation concerning the nature of the crime and the arrested persons connection thereto must be explored. *Adams v. United States*, 130 U.S.App.D.C. 203, 399 F.2d 574, 579 (1968) (Concurring Opinion, Burger, J.). This is the type of necessary delay involved in the case before us. While appellant was going through the administrative procedures on the Crosby charges, the police began receiving new information and evidence on the similarities of the crime to that of the Leary and Edwards incidents. It was during this time that appellant was held.

Case law supports this finding. In *Commonwealth v. Whitson*, 461 Pa. 101, 334 A.2d 653 (1975), the delay between the time of arrest and arraignment was deemed a necessary step by police while they checked the defendant's history. In *Commonwealth v. Terry*, 457 Pa. 185, 321 A.2d 654 (1974), the delay was also held necessary, while police compiled lists of names of accomplices along with other administrative details.

It is also important to note that our Supreme Court stated that "the relevant time period when analyzing a *Futch* claim is that between arrest and self-incrimination. *Commonwealth v. Rowe*, 459 Pa. 163, 327 A.2d 358 (1974)." *Commonwealth v. Taylor*, 472 Pa. 1, 15, 370 A.2d 1197, 1204 (1977). In the case before us, appellant confessed to the Leary and Edwards shootings as soon as the ballistics report was in. That was within six hours of his arrest and therefore well within the *Futch* standard that governs this case.

■ In this argument, appellant raises the further contention that the police violated his *Miranda* rights by interrogating him after he initially indicated he wished to remain silent. This was not the situation as is reflected in the

8. See Judge Shoyer's opinion disposing of this issue at the suppression hearing.

record. After appellant decided to remain silent, no interrogation took place. It was only after the police confronted appellant with the ballistics report and other facts they had gathered which connected him to the other two crimes, and after a second reading of the *Miranda* warnings, that appellant voluntarily relinquished his rights and made a statement concerning the crimes. The same sequence of events occurred in *Commonwealth v. Grandison*, 449 Pa. 231, 296 A.2d 730 (1972). There, defendant was arrested for traffic violations. Ten hours after his decision to remain silent, police learned of his true identity and additional charges filed against him. The court held that it was proper for the police to confront defendant with these matters. Subsequent to that confrontation, defendant voluntarily changed his mind about remaining silent and confessed. The confession was properly entered into evidence. See also *Commonwealth v. Jefferson*, 445 Pa. 1, 281 A.2d 852 (1971). Appellant attempts to distinguish these cases in that the methods employed by police show that the accuseds voluntarily changed their minds while appellant in this case was forced to confess due to the delay and being placed in isolation. The evidence that improper police tactics were used is not convincing. Cf. *Commonwealth v. Milton*, 461 Pa. 535, 337 A.2d 282 (1975). Informing appellant of additional developments in the case can go toward exculpating as well as inculpating appellant's involvement in the crime. As long as the *Miranda* warnings were properly readministered, which they were in this case, no error was committed in allowing into evidence the statements of appellant made after requestioning.

## II.

Next appellant contends that the identifications made by the two victims, Crosby and Edwards, were suggestive and should have been suppressed. The events surrounding the Crosby identification are as follows:

Crosby and appellant had socialized over a cup of coffee for several hours during the early morning of August 8,

1975, after which Crosby was robbed and shot. Crosby gave police an accurate description of appellant while being transported to the hospital. This description was radioed to the patrol cars on duty in the area, and appellant and another man, Mr. Campbell, were picked up and taken to Crosby's hospital room for an identification all within a half hour of the crime.

Based on this information appellant argues that since the confrontation was uncounselled, unduly suggestive, and that the victim was not near death, the lower court erred in not suppressing this identification testimony by Crosby and his further in-court identification testimony. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

██ Appellant's contention is not supported by the law or the evidence. The Crosby hospital identification is similar to the identification that took place in *Commonwealth v. Aaron,* 255 Pa.Super. 289, 386 A.2d 1006 (1978). There, two victims who had been robbed and stabbed were rushed to the hospital. Within one hour and one half hours of the crime, the defendant was apprehended and taken to the hospital where he was positively identified by both victims. The court held that the preincarceration identifications made by the two victims were not violative of any of the constitutional rights of the defendant. Instead, the identification contained the important elements of "on the scene" identifications since they occurred so close in time and proximity to the crime. Such "on the scene" identifications are admissible since their reliability outweighs any prejudice. In the case before us, appellant was apprehended within one half hour of the crime and positively identified by Crosby at the hospital. This fits squarely under *Commonwealth v. Aaron* as an "on the scene" type identification that is admissible.

This argument is buttressed by the fact that Crosby's in-court identification of appellant certainly had an independent basis apart from the prior hospital identification. Crosby had spent three and one half hours conversing with

appellant in a well lit coffee shop prior to the shooting. This gave Crosby a more than adequate opportunity to observe appellant and later identify him independent of the hospital confrontation. Cf. *Commonwealth v. Hancock*, 455 Pa. 583, 317 A.2d 588 (1974); *Commonwealth v. Jenkins*, 232 Pa.Super. 523, 335 A.2d 463 (1975).

The facts surrounding the identification of appellant by Edwards show that Edwards testified appellant approached him, placed a gun at his left temple and demanded his money. After Edwards emptied his wallet which contained $7.00, appellant shot him in the lower back. As Edwards fell forward, he turned his head and viewed appellant standing under a street light. Edwards testified that he turned over and looked directly at appellant for a period of ten seconds. Based on this, Edwards gave the police a description of a Negro male with a lighter coloration on one side of his face, wearing a leather jacket. One month later, at the preliminary hearing on the charges against appellant concerning the Edwards incident, counsel for appellant requested a pre-preliminary hearing lineup since there had not been a confrontation between Edwards and appellant for a period of four weeks. The request was denied and Edwards identified appellant as his attacker during the hearing.

On appeal, appellant contends it was error to deny his motion for a pre-preliminary hearing lineup relying on *Commonwealth v. Sexton*, 246 Pa.Super. 30, 369 A.2d 794 (1977). In *Sexton*, defendant was identified at a certification hearing after repeated requests for a lineup had been denied. Defendant in *Sexton* was sitting at counsel table during the certification hearing and was the only black male in the room. The court held that the defendant had a right, upon timely request, to have his identification tested by less suggestive circumstances. We must note first that *Sexton* was decided in 1977, two years after the alleged suggestive identification was made in this case and thus would not apply here. Furthermore, prior and subsequent cases have specifically stated that there is no constitutional right to a pre-trial lineup. *Commonwealth v. Cornish*, 471 Pa. 256,

261, 370 A.2d 291 (1977); *Commonwealth v. Evans*, 460 Pa. 313, 333 A.2d 743 (1975). A second distinguishing factor in *Sexton* is that there, counsel had made repeated motions for a lineup prior to the certification hearing which had been denied. Counsel in the case before us made no motion until the preliminary hearing, even though the hearing had been scheduled and postponed twice prior to the September 8 date. This would certainly be an untimely motion even if a right to a pre-preliminary hearing lineup existed.

■ Appellant contends further that confrontation at the preliminary hearing was unduly suggestive and tainted Edwards' subsequent identification of appellant. The reasons stated by appellant for the unreliability of the Edwards identification are that Edwards had a poor opportunity to view appellant since he was shot in the back, the description given was not very accurate, he knew of appellant's arrest and statement to the police prior to the identification, and he identified appellant while he was sitting at counsel table.

The suppression hearing judge found that although some details of the description given to the police were not correct, most were accurate since Edwards had an opportunity to view appellant under a street light for a period of ten seconds under circumstances when the most fleeting and most minute passage of time would seem like an eternity to a stricken man. It certainly gave Edwards' in-court identification a basis independent of the confrontation at the preliminary hearing.

In *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) a suggestive pre-indictment identification was upheld when balancing all the following factors:

"the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." 97 S.Ct. at 2253.

In *Manson,* the person who identified the defendant was an undercover agent who observed him for a period of two to three minutes at a doorway lighted by natural light. The photographic identification which took place two days later contained only one photograph and was therefore suggestive and unnecessary. However, the court concluded that after examining all the factors together they could not say there was a "very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377 at 384, 88 S.Ct. 967 at 971, 19 L.Ed.2d 1247 at 1253.

The *Manson* case is slightly different from the one at bar in that it dealt with an undercover agent, trained in identifying suspects who had a longer period of time during which he observed the suspect. However, ". . . reliability is the linchpin in determining the admissibility of identification testimony . . ." *Manson,* 97 S.Ct. at 2253. When analyzing the *Manson* factors in the case before us, the reliability of Edwards' identification outweighs the corrupting effect of any suggestiveness. Although Edwards had only ten seconds to view his attacker, he saw him within ten feet and under a street light. His description was accurate as to race, height, jacket, and hair, and his attention seemed well focused despite the serious wound in his back. He was very certain at the time of the confrontation and only a period of four weeks had elapsed. Under the totality of the circumstances, we do not feel there was a "very substantial likelihood of irreparable misidentification," and we affirm the decision of the lower court on this point.

### III.

■ Appellant argues that it was error for the lower court to admit a statement made by appellant to Mr. Campbell, the man who was picked up with appellant and transported to the hospital for the Crosby identification, concerning the possession of the gun found on appellant at the time of the stop. Mr. Campbell testified that:

"Well, I asked him why did he tell the policemen that I had given him the gun and to tell the policemen I didn't

know him and he did when we got—left the van at the station." N.T. 447.

Appellant contends that this statement was the proper subject of the suppression hearing; and, since appellant challenged all statements attributable to him at the suppression hearing and the Commonwealth chose not to litigate the issue there, this statement must be treated as suppressed. *Commonwealth v. Heacock*, 467 Pa. 214, 355 A.2d 828 (1976); *Commonwealth v. Tull*, 224 Pa.Super. 494, 307 A.2d 318 (1973).

Once again, we must disagree with appellant's argument and uphold the rationale of the lower court. The statement made by appellant to the police concerning Campbell giving him the gun was not the result of a police interrogation as protected by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It was a spontaneous utterance by appellant, at most, and only part of the general fact finding at the early stage of the investigation. Under these circumstances, the statements were admissible regardless of the fact they were not raised at the suppression hearing since they were not properly the subject of inquiry there. *Commonwealth v. Bordner*, 432 Pa. 405, 247 A.2d 612 (1968); *Commonwealth v. Padgett*, 428 Pa. 229, 237 A.2d 209 (1968).

Even if error had been committed by the lower court, which we do not feel has occurred, the error would be harmless. Appellant reiterated the story of obtaining the gun from a "stranger" when he assumed the stand in his own defense. N.T. 696–699. When a defendant challenges statements in the pretrial hearing but then repeats those statements on the stand at the trial, any error is rendered harmless beyond a reasonable doubt. *Commonwealth v. Hart*, 471 Pa. 271, 370 A.2d 298 (1977).

## IV.

Appellant raises the fourth issue of whether the lower court erred in denying his request for a continuance or, in the alternative, to select jurors from an entirely fresh panel. The facts reveal that 15 veniremen who had participated in

the voir dire concerning the trial of the Leary homicide were among those chosen to be empanelled in the Crosby-Edwards trial. As soon as defense counsel noticed this duplication, the 15 jurors were dismissed from the jury room and voir dire proceeded with the remaining veniremen. Appellant contends that the mere presence of these fifteen veniremen tainted the rest of the jury and therefore his request for a continuance until a new group of veniremen could be summoned should have been granted in order to avoid any possibility of prejudice to appellant. *Commonwealth v. Stewart*, 449 Pa. 50, 295 A.2d 303 (1972); *Commonwealth v. Free*, 214 Pa.Super. 492, 259 A.2d 195 (1969).

It is true that a defendant who is tried before jurors who know he has been charged with another crime is deprived of a trial before a fair and impartial jury. *Commonwealth v. Free*, supra. However, such was not the case here. The jurors who had been in the voir dire in the Leary incident were dismissed *before* the voir dire occurred in this trial. Although there is always a possibility that pretrial publicity and conversations among the jurors prior to the voir dire may take place, the appellant did not establish that a fair and impartial jury could not be empanelled, *Commonwealth v. Martin*, 465 Pa. 134, 348 A.2d 391 (1975), or that prejudice occurred. *Commonwealth v. Dukes*, 460 Pa. 180, 331 A.2d 478 (1975).

Based on these facts, we do not find the lower court abused its discretion by not granting appellant's request for a continuance. The veniremen who knew of the prior trial were dismissed before the selection of the jury in this case, and the judge took adequate steps to assure that the remaining veniremen did not know of the previous proceedings.[9]

We defer to the lower court opinion of Judge Guarino which more than adequately deals with the remaining points raised by appellant on this issue.[10]

**9.** See Judge Guarino's opinion at pages 2 through 7; N.T. 78, 102.

**10.** *Id.*

## V.

Appellant's fifth contention is that the trial judge erred in granting the Commonwealth's motion to consolidate the trial of the indictments concerning the Edwards and Crosby incidents.

The general policy is to encourage the consolidation of indictments whenever the needs of judicial economy will be advanced. *Commonwealth v. Lasch*, 464 Pa. 573, 582, 347 A.2d 690 (1975); Pa.R.Cr.P. 219(b).[11] However, the interests of judicial expedience must be weighed against the possibility of resultant prejudice against the defendant. The decision to consolidate is a matter within the discretion of the trial judge whose decision may only be reversed for a manifest abuse of discretion or a showing of prejudice and clear injustice to the defendant. *Commonwealth v. Irons*, 230 Pa.Super. 56, 326 A.2d 488 (1974).

Appellant first argues that the two indictments should not be consolidated for trial because the fact patterns in each are dissimilar and do not show the same or similar characteristics envisioned by Pa.R.Cr.P. 219(b). Although the factual situations are not identical, we feel they do come under the purview of Rule 219. Both victims were robbed and sЬot in the back within a period of five hours and only a short subway ride apart. Appellant was identified as the attacker in both instances. This is a sufficient nexus to consolidate the two crimes for trial. See *Commonwealth v. Banks*, 454 Pa. 401, 311 A.2d 576 (1975); *Commonwealth v. Brown*, 227 Pa.Super. 410, 323 A.2d 223 (1975).

Next we must analyze whether any prejudice to the defendant outweighs the policy of judicial expediency. Three types of prejudice may occur if separate offenses are joined.

11. Pa.R.Cr.P. 219(b) reads:
"Two or more offenses, of any grade, other than murder, may be charged in the same indictment if they are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. There shall be a separate count for each offense charged."

"These are: (1) defendant may become embarrassed or confounded in his defense; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crimes charged; or (3) the jury may cumulate evidence of the various crimes charged and find guilt, when, if considered separately, it would not so find." *Commonwealth v. Peterson*, 453 Pa. 187, 194–97, 307 A.2d 264, 267–69 (1973).

Appellant contends the prejudice rests in the second and third type listed above which raises the question of whether the "other crimes" test was met. Generally, evidence of one crime is inadmissible in the trial of another crime. *Commonwealth v. Wable*, 382 Pa. 80, 114 A.2d 334 (1955). The exception to this general rule is when "the evidence of other crimes has an independent relevance to the crime being tried." *Commonwealth v. Lasch*, 464 Pa. at 586, 347 A.2d at 696. This occurs when the evidence tends to prove motive, intent, common scheme or plan, absence of mistake or accident, or "design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others." *Id.* The evidence presented meets the "other crimes" test of admissibility in that it tends to show a common plan or scheme. The two robbery-shootings occurred within a short time span, not far from each other. Both victims were robbed first then shot in the back. Each could have been used to prove the scheme behind the pattern of that early morning of crime. The appellant was identified in both shootings. Therefore the test for consolidation is met.

One final consideration is whether the evidence of the two crimes was so complex that it could not be separated in the minds of the jury. *Commonwealth v. Lasch*, 464 Pa. at 591, 347 A.2d 690. The evidence on the record before us in this case appears to be simple and direct. The trial judge charged the jury that they were to consider the incidents separately, (N.T. 1075, 1083; 1097–8), and there is no indication that the jury would have confused or cumulated the

evidence. For all of these reasons, the trial judge did not err in granting the Commonwealth's motion for consolidation.

■ Relying on *Commonwealth v. DeMichel*, 442 Pa. 553, 277 A.2d 159 (1971), appellant raises the point that the trial judge in this case had no authority to overrule a prior decision of a judge of equal jurisdiction who had ordered severance. Appellant misstates the facts and the law here. The judge of equal jurisdiction referred to by appellant was the calendar room judge who did not order joinder of the crimes. The trial judge was not without jurisdiction to order consolidation based on the inaction of the calendar control judge. We did not find any case law that this type of inaction by the calendar control judge binds the trial court in its decision on consolidation.

## VI.

■ Appellant's sixth argument is that the lower court erred in admitting testimony, over objections and motions for mistrial, relating to the facts of the Leary homicide. We do not feel this was reversible error.

During the trial, appellant mentioned several times that he had been taken to the homicide division of the police department. When asked by detectives why he had killed five white people, appellant answered that he did not know anything about the killing of five white people and that he wouldn't hurt anybody. (N.T. 720–722). In order to rebut appellant's statement, the Commonwealth introduced evidence of the ballistics report that connected appellant with the Leary homicide. We have already ruled that the ballistics report was admissible since it was relevant to showing why the arraignment was delayed.[12] Additional evidence was then introduced by the Commonwealth to prove that the Leary homicide had, in fact, taken place. (N.T. 352–401; 910–945). The lower court gave the jury a curative instruction that they were not to consider this testimony as sub-

12. See discussion of Issue I.

stantive evidence but only as affecting appellant's credibility. (N.T. 846–847). Appellant argues that this reference to the homicide was prejudicial error that requires us to grant a new trial.

The general rules concerning the admissibility of other crimes are summarized by our court in *Commonwealth v. Grimm*, 249 Pa.Super. 441, 446, 378 A.2d 377, 379 (1977):

"As a general rule, the Commonwealth may not introduce evidence that the accused has committed crimes other than the one with which he is charged. *Commonwealth v. Ulatoski*, [472] Pa. [53], 371 A.2d 186 (1977); *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972); *Commonwealth v. Bruno*, 215 Pa.Super. 390, 258 A.2d 666 (1972); *Commonwealth v. Trowery*, 211 Pa.Super. 171, 235 A.2d 171 (1967). There are two commonly recognized exceptions to the general rule. Subject to the trial judge's discretion, evidence of other crimes which is relevant to an issue in the case may be admitted if its probative value outweighs its prejudicial impact. See *Commonwealth v. Ulatoski*, supra; *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973); McCormick, Evidence § 185 (Cleary 2d ed. 1972). Secondly, if the accused takes the stand in his own defense, his veracity may be attacked by introduction of evidence of crimes involving dishonesty or false statement subject to certain restrictions. See *Commonwealth v. Katchmer*, 453 Pa. 461, 309 A.2d 591 (1973); *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973). See also Act of March 15, 1911, P.L. 20, § 1; 19 P.S. § 711."

When applying these rules to the case before us, we conclude that the probative value of the evidence admitted outweighed any prejudicial impact. Appellant specifically mentioned he had been taken to homicide and then denied any involvement in hurting anyone. The facts admitted into evidence did not concern a conviction of an unrelated event that occurred several years prior to the crimes being tried. The evidence admitted related directly to the events of the trial at hand. Under these limited circumstances we feel

the trial judge did not abuse his discretion in admitting the testimony. See *Commonwealth v. Martinolich*, 456 Pa. 136, 318 A.2d 680 (1974); *Commonwealth v. James*, 433 Pa. 508, 253 A.2d 97 (1969); *Commonwealth v. Bastone*, 211 Pa.Super. 509, 239 A.2d 863 (1966); *Commonwealth v. Petrulli*, 182 Pa.Super. 625, 128 A.2d 108 (1956).

The case appellant relies on, *United States v. Ostrowsky*, 501 F.2d 318 (7th Cir. 1974), is distinguishable in that there, gruesome details concerning a murder were introduced. The court held that although the murder itself was admissible to prove that the defendant had stolen a car, the further murder details were not necessary. The Court of Appeals felt the lower court should have carefully edited out those prejudicial facts that tended to be cumulative. In the case at bar, there were no such specifics introduced into evidence. Only what was necessary to impeach appellant's direct testimony was admitted. The curative instruction prevented any improper cumulation of evidence, and the admitted evidence was clear of any error.

## VII.

One charge in appellant's indictment was for the possession of a prohibited offensive weapon under Section 908 of the Crimes Code. 18 Pa.C.S.A. § 908. Appellant demurred to this indictment at the end of the Commonwealth's case on the grounds that the gun in question did not fit the statutory proscriptions. The demurrer was overruled and the jury found appellant guilty on this charge.

The issue before us is whether the gun in question, a .32 caliber Smith and Wesson pistol, is within the class of weapons prohibited by § 908. The Commonwealth argues that this gun is more commonly known as a "Saturday Night Special" since it is so readily available on the market and is frequently used in the commission of crimes. They argue that since the gun has a barrel length of only 2½ inches, its size alone promotes concealment and should be included under the statute.

 Case law does not support the Commonwealth's argument. In *Commonwealth v. McHarris*, 246 Pa.Super. 488, 371 A.2d 941 (1977), our court held that a .38 caliber Smith and Wesson revolver was not a prohibited offensive weapon within the meaning of § 908 of the Crimes Code. In order for a weapon to be classified under this section it must serve no lawful purpose, such as "bombs, machine guns, sawed off shot guns, black jacks." However, other weapons like:

> "sporting rifles, shotguns and revolvers . . . have peaceful as well as lethal potentialities . . . [and] cannot be dealt with by drastic prohibition. Not only must we take account of the desires of sportsmen, farmers, and dealers in heavy equipment, we must also recognize that revolvers . . . are frequently carried for defensive purposes." Model Penal Code § 5.07, comment (Tent. Draft No. 13, 1961).

 The same analysis applies to the pistol in question before us. Although it is a small gun capable of concealment and tends to be used for criminal purposes, it may also be carried by any citizen for defensive purposes. It is not within the category of a bomb, sawed off shotgun, or the like.

The judgment against appellant on the charge of violation of § 908 is vacated and appellant is discharged on this count.

## VIII.

 Appellant argues that it was error to allow the district attorney to introduce prior consistent statements of his witness. We see no merit in this claim. The district attorney merely rehabilitated his witness by use of the prior consistent statement. *Commonwealth v. Fisher*, 447 Pa. 405, 290 A.2d 262 (1972); *Commonwealth v. Cooper*, 230 Pa.Super. 204, 327 A.2d 177 (1975).

 Finally, appellant argues that certain actions of the district attorney at trial influenced the jury to the prejudice of his client and that the cumulative effect of these actions

was grounds for a mistrial which was denied. Although we cannot condone the conduct of the district attorney at times during this trial, we feel the few lapses in deportment were sufficiently dealt with by the curative instruction given by the lower court that prevented any error. See *Commonwealth v. Cannon*, 458 Pa. 374, 327 A.2d 45 (1974).[13]

The conviction of appellant on the charge of violating § 908 of the Crimes Code is vacated. The judgment of the lower court is affirmed on all other counts.

SPAETH, J., concurs in the result.

PRICE, J., dissents.

JACOBS and WATKINS, former President Judges, and HOFFMAN, J., did not participate in the consideration or decision of this case.

---

**13.** See also lower court's opinion at pp. 16–17.