521 A.2d 442

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Herbert Edward THOMAS, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 22, 1986.

Filed Feb. 19, 1987.

2

Timothy H. Knauer, West Chester, for appellant.

4

Thomas J. Wagner, Assistant District Attorney, West Chester, for Commonwealth, appellee.

Before WIEAND, OLSZEWSKI and CERCONE, JJ.

OLSZEWSKI, Judge:

This is an appeal from the judgment of sentence imposed following appellant's conviction, after a trial by jury, for burglary, theft, receiving stolen property and criminal conspiracy. Appellant, Herbert Edward Thomas, asserts as error: (1) the trial judge's decision to consolidate for trial five of the cases against him; (2) the granting of the Commonwealth's petition to extend the time for trial and the denial of appellant's Rule 1100 motion to dismiss; and (3) the denial of appellant's motions for a mistrial relating to testimonial references to his involvement in other crimes.

Appellant was arrested March 13, 1980, along with several other individuals, on approximately twelve criminal complaints charging robbery, burglary, criminal conspiracy and receiving stolen property. The charges all involved burglaries and theft-related offenses allegedly perpetrated by the same group of actors within a 39–day period. As a result, nine of the informations were consolidated for trial.[1] Appellant moved to sever the informations and his motion was granted in part, the trial court ordering two separate trials—one for informations 955, 956, 957, and 1122 of 1980 and the other for informations 958, 959, 960, 1033, and 1034 of 1980. On March 2, 1981, following a trial by jury on the latter group of informations, appellant was convicted on four of five of those informations. Thereafter, on March 19, 1981, appellant filed post-verdict motions, which were denied by the court *en banc* on February 8, 1985. Appellant was sentenced on February 14, 1985 to a total[2] of 14 to

---

1. As of the time of the instant trial, appellant had been tried on three of the informations.

2. Specifically, appellant was sentenced to the following: upon two of the convictions for receiving stolen property, to an aggregate term of incarceration of not fewer than four nor more than ten years; upon the convictions for burglary, to an aggregate consecutive term of incarceration of not fewer than ten nor more than twenty-five years;

35 years incarceration on the burglary, theft and receiving stolen property counts and to 20 years probation for criminal conspiracy, each sentence to be served consecutively to the others and to all other sentences previously imposed by other judges. This timely appeal followed.

Initially, we observe that appellant's post-verdict motions were filed seven days late.[3] *See* Pa.R.Crim.P. 1123(a). The trial court nevertheless acted upon and denied each motion. In *Commonwealth v. Gregory*, 309 Pa.Super. 529, 455 A.2d 1210 (1983), we held that, even though the trial court addresses untimely post-verdict motions on their merits, the issues raised in the motions are waived. If *Gregory* applies, then appellant waived the issues presented in this appeal.

■ We are troubled, however, by our notation in *Gregory* that a waiver could be found because the record disclosed that "the appellant was properly informed of the necessity for filing post-verdict motions and the period in which this must be done...."[4] *Id.*, 309 Pa.Super. at 531 n. 3, 455 A.2d at 1211 n. 3. Instantly, neither party raised the issue of the untimeliness of appellant's post-verdict motions. Thus, the Commonwealth did not argue that appellant waived the issues on appeal and appellant did not offer any justification for the late filing. Consequently, unlike the situation in *Gregory*, the record includes no evidence as to whether the trial court properly advised appellant regarding post-verdict motions in accordance with Pa.R.Crim.P. 1123(c). Under these circumstances, we refuse to find that appellant has in fact waived the questions presented in this

and upon each conspiracy conviction, to probation for consecutive periods of ten years.

3. The record contains nothing indicating that appellant requested leave to file the post-verdict motions *nunc pro tunc*.

4. Pa.R.Crim.P. 1123(c) provides:
   Upon the finding of guilt, the trial judge shall advise the defendant on the record: (1) of the right to file post-verdict motions and of the right to the assistance of counsel in the filing of such motions and on appeal of any issues raised therein; (2) of the time within which he must do so as set forth in paragraph (a); and (3) that only the grounds contained in such motions may be raised on appeal.

appeal. Rather than remand for completion of the record, however, we believe it expedient to address the merits of appellant's claims. Having done so, we find that we must affirm.

Appellant alleges first that the trial court erred when it partially denied his motion for severance of the many criminal charges against him and consolidated the instant five cases for trial. We disagree. The decision to consolidate separate indictments or informations is within the discretion of the trial judge and will be reversed only where there has been a manifest abuse of discretion or a showing of prejudice and clear injustice to the defendant. *Commonwealth v. Morris*, 493 Pa. 164, 171, 425 A.2d 715, 718 (1981); *Commonwealth v. Lasch*, 464 Pa. 573, 584, 347 A.2d 690, 695 (1975); *Commonwealth v. Slyman*, 334 Pa. Super. 415, 437, 483 A.2d 519, 531 (1984). Consolidation of indictments or informations is encouraged whenever the needs of judicial economy will be advanced. *Commonwealth v. Lasch, supra*, 464 Pa. at 582, 347 A.2d at 694; *Commonwealth v. Rose*, 265 Pa.Super. 159, 175, 401 A.2d 1148, 1156 (1979). The policy of judicial expedience, however, must be weighed against the possibility of resultant prejudice to the defendant. *Id.*, 265 Pa.Super. at 175, 401 A.2d at 1157.

At the time of appellant's trial Rule 219(b) of the Pennsylvania Rules of Criminal Procedure addressed the propriety of consolidation.[5] That rule provided that:

Two or more offenses, of any grade, other than murder, may be charged in the same indictment if they are of the

5. As we stated in *Commonwealth v. Zigler*, 353 Pa.Super. 168, 171 n. 1, 509 A.2d 389, 390 n. 1 (1986):

1. The controlling law on this subject is now contained in Pennsylvania Rule of Criminal Procedure 1127 which became effective July 1, 1982. Rule 1127 provides that:

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion.

Pa.R.Crim.P. 1127(A)(1). Since Rule 1127 codified the already existing standard, analysis under either rule is the same.

same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan....

Pa.R.Crim.P. 219(b). "Although the rule applies specifically to joinder of offenses, (our Supreme Court) has found it equally applicable to the consolidation for trial of separate indictments or informations." *Commonwealth v. Morris, supra,* 493 Pa. at 170, 425 A.2d at 717–718.

■ First, we believe the offenses consolidated are "of the same or similar character" within the meaning of Rule 219(b). All of the offenses were theft-related, with four of five of the cases involving the burglary of a private home.[6] *See Commonwealth v. Lasch, supra,* 464 Pa. at 583, 347 A.2d at 695 (Court found that five alleged burglaries covered by four separate indictments constituted offenses of the same or similar character as envisioned by the language of Rule 219(b)). Additionally, appellant was charged with receiving the property stolen in all but one case. Second, as will be discussed *infra,* we believe that the offenses are sufficiently linked to constitute part of a common scheme or plan. Accordingly, consolidation was appropriate under Rule 219(b).

Next we must analyze whether any prejudice to the appellant outweighs the policy of judicial expediency. Three types of prejudice may occur if separate offenses are joined.

These are: (1) defendant may become embarrassed or confounded in his defense; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt, when, if considered separately, it would not so find.

6. One case involved the burglary of the office of Project Help.

*Commonwealth v. Peterson,* 453 Pa. 187, 194, 307 A.2d 264, 267–269 (1973). Instantly, appellant bases his claim of prejudice on the second and third types listed above.[7]

█ Because the perpetration of one crime is not proof of the commission of another, ordinarily, evidence of other crimes is inadmissible in the trial of a separate crime. *Commonwealth v. Lasch, supra,* 464 Pa. at 585–586, 347 A.2d at 696. This general rule, however, has no application "where evidence of other crimes has an independent relevance to the crime being tried...." *Id.,* 464 Pa. at 586, 347 A.2d at 696. Accordingly, it has frequently been held that evidence of another crime is generally admissible when it tends to prove: (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design involving incidents so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial. *Commonwealth v. Peterson, supra,* 453 Pa. at 197–198, 307 A.2d at 269; *Commonwealth v. Rhodes,* 250 Pa.Super. 210, 216, 378 A.2d 901, 904 (1977).

Instantly, we conclude that the similar circumstances surrounding the five incidents bring them within the ambit of the common scheme, plan or design exception. As the trial court explained, all of the offenses were theft-related and took place within a brief span of time—39 days. Moreover, all of the burglaries were allegedly performed by the same group of thieves operating in a similar manner.

Specifically, although defendant himself never actually entered into any of the burgled buildings, he was present and participated in the planning of every one of the crimes, with the exception of the McBride robbery. It was defendant who, upon the return of his associates to his discotheque, inventoried the goods and made arrangements to have them fenced. And, it was defendant to whom the fencing profits were paid, and who was the

7. Appellant has not argued in his brief that he was in any way embarrassed or confounded in his defense by the consolidation.

caretaker of the group's money pool. (N.T. 2/27/81, 573–611).

In addition, entry to the victim's homes in all but one of the cases was gained by breaking in a kitchen or cellar window....

Trial court opinion at 4–5 (footnotes omitted). Additionally, all five cases turned on the testimony of appellant's former partner, Richard Falasco. These factors suggest a common scheme or design "involving incidents so related to each other that proof of one tends to prove the others." *Commonwealth v. Peterson, supra,* 453 Pa. at 197, 307 A.2d at 269.

A final consideration is whether the evidence of each offense was so complex that it could not be separated in the minds of the jury. *Commonwealth v. Lasch, supra,* 464 Pa. at 591, 347 A.2d at 696; *Commonwealth v. Rose, supra,* 265 Pa.Super. at 176, 401 A.2d at 1157. In the matters at bar, there is no indication that the jury would have confused the evidence. None of the fact situations are so complex, nor are any of the incidents so intertwined as to make the jury incapable of separating the offenses. Indeed, the jury acquitted appellant of the charges arising out of one of the burglaries tried. Additionally, as observed by the trial court, "(t)he risk of prejudice was further abated by a carefully drafted verdict sheet which set forth with particularity the separate offenses and counts, both by name of the victim and by date". Trial court opinion at 6. In view of the foregoing, we find no error in the trial court's decision to consolidate the instant five cases for trial.

Appellant argues next that the trial court erred in granting the Commonwealth's petition to extend and in denying appellant's petition to dismiss pursuant to Pennsylvania's speedy trial rule, Pa.R.Crim.P. 1100. Rule 1100(a)(2) directs that trial commence no later than 180 days from the date on which the complaint is filed. The complaints involved in the case at bar were filed on March 13, 1980. The Commonwealth, therefore, had until September 6, 1980 to bring

appellant to trial. On September 3, 1980, however, the Commonwealth filed an application under Rule 1100(c) to extend the time it had to commence trial. The Commonwealth's application was assigned for a hearing on October 8, 1980. On that date, both appellant's counsel and the district attorney handling these cases were trying another matter involving appellant and were therefore unavailable for a Rule 1100 hearing. Additionally, for reasons set forth in the record, the Commonwealth decided that it would be most expedient to hold the Rule 1100 hearings on appellant's cases pre-trial. At no time did appellant's counsel object to proceeding in this manner. For various reasons discussed *infra*, trial of the instant five cases did not commence until February 24, 1981. Accordingly, the Rule 1100 hearing on these matters was held pre-trial on that date. At the conclusion of the hearing, the trial court granted the extension. We must now determine whether this extension was proper.

Our review is guided by our Supreme Court's pronouncement in *Commonwealth v. Mayfield*, 469 Pa. 214, 222, 364 A.2d 1345, 1349–1350 (1976):

> Henceforth, the trial court may grant an extension under rule 1100(c) only upon a record showing: (1) the "due diligence" of the prosecution, and (2) certification that trial is scheduled for the earliest date consistent with the court's business; provided that if the delay is due to the court's inability to try the defendant within the prescribed period, the record must also show the causes of the court delay and the reasons why the delay cannot be avoided.

*Commonwealth v. Hollingsworth*, 346 Pa.Super. 199, 205–206, 499 A.2d 381, 384 (1985).

We address first *Mayfield*'s due diligence requirement. The burden of proving prosecutorial due diligence rests on the Commonwealth under the standard set out in *Commonwealth v. Ehredt*, 485 Pa. 191, 195–196, 401 A.2d 358, 360–361 (1979):

The Commonwealth has the burden, by a preponderance of the evidence, of showing it has met the requirements of Rule 1100(c). *Cf. Commonwealth v. Wade,* 475 Pa. 399, 380 A.2d 782 (1977); *Commonwealth v. Mitchell,* 472 Pa. 553, 372 A.2d 826 (1977). Furthermore, in reviewing a hearing court's ruling that the Commonwealth has met its burden, we consider only the evidence presented by the Commonwealth and so much evidence, as fairly read in the context of the record as a whole, remains uncontradicted. *See Commonwealth v. Mitchell, supra. Commonwealth v. Hollingsworth, supra,* 346 Pa.Super. at 206, 499 A.2d at 384. Importantly, "(t)he 'due diligence' required of (the Commonwealth) does not demand perfect viligance (sic) and punctilous (sic) care, but rather a reasonable effort." *Commonwealth v. Koonce,* 511 Pa. 452, 461, 515 A.2d 543, 548 (1986), citing *Commonwealth v. Polsky,* 493 Pa. 402, 426 A.2d 610 (1981).

■ Our review of the record compels a finding that the Commonwealth has met its burden of proving due diligence. Significantly, nothing in the record shows that the Commonwealth was attempting to delay bringing appellant to trial. Appellant's preliminary hearings on these five cases were originally scheduled for March 21, 1980, along with those of some 31 other defendants involved in the alleged burglary ring. On that date, because appellant appeared without counsel, the district justice continued the hearings. The preliminary hearings were next scheduled for April 11, 1980, at which time appellant had counsel, but appellant's counsel was unavailable because he was representing appellant at a preliminary hearing in another case which lasted the entire day. Subsequently, in order to expedite matters, the district attorney's office took over the scheduling of all the preliminary hearings relating to the burglary ring. The record indicates that the district attorney's office attempted to schedule appellant's preliminary hearings several times during May of 1980, but defense counsel was unavailable. The preliminary hearings for these cases were then held on June 12, 13 and 26 of 1980.

Thereafter, at the time the assistant court administrator looked to list these cases for trial, the trial lists for the July and August sessions were full.[8] Pursuant to a Commonwealth request for a special listing, however, appellant's cases were listed at number 56 on the August list. The Commonwealth and appellant's counsel then met with Judge Stively and requested that all of appellant's cases be moved to number 1 on the August list. Judge Stively agreed to allow one of appellant's cases to be moved up to number 1. The Commonwealth, with the agreement of appellant's counsel, chose to try the Narbonne matter because of the seriousness of the charges and because it had been previously tried in July of 1980, ending in a mistrial. The instant cases against appellant therefore remained at number 56 and were not reached during the August session, that session being the last one prior to the September 6, 1980 run date.

The foregoing demonstrates that the delays encountered were due, not to a lack of diligence on the part of the Commonwealth, but to the unavailability of appellant and/or appellant's counsel and to judicial delay occasioned in part by the number of cases pending against appellant. Moreover, the Commonwealth's decision to try the Narbonne case involving appellant does not reflect a lack of due diligence with respect to the instant five cases. *"Commonwealth v. Mayfield* does not require the Commonwealth to exhaust the possibility of rearranging overcrowded dockets to accommodate the Rule 1100 run date regardless of that rearrangement's effect on other matters." *Commonwealth v. Crowley,* 502 Pa. 393, 395, 466 A.2d 1009, 1010 (1983).

Moreover, as required by *Mayfield,* the record reveals the causes of the judicial delay and the reasons why it could not be avoided. As discussed earlier, prior to the August 1980 trial session, the trial court allowed the Commonwealth to move one of appellant's cases up to number 1 on the list,

**8.** The record discloses that there were shortened trial sessions during the summer months and a limited number of judges available to try the cases listed.

but refused with respect to the others. In light of testimony regarding a backlog of cases caused by shortened summer sessions and a limited number of judges as well as the high number of cases pending in the system, we find nothing improper in this refusal. *See Commonwealth v. Morales,* 508 Pa. 51, 494 A.2d 367 (1985). As our Supreme Court observed in *Commonwealth v. Crowley, supra,* 502 Pa. at 402–403, 466 A.2d at 1014:

> Rule 1100 should not be construed to require Common Pleas Courts with backlogged criminal dockets to devote all their administrative and judicial resources to guarantee that every defendant is tried within the period prescribed by the Rule. It should be sufficient for the court to establish that it has devoted a reasonable amount of its resources to the criminal docket and that it scheduled the criminal trial at the earliest possible date consistent with the court's business.

(footnote omitted).

Finally, the record demonstrates that trial was scheduled for the earliest date consistent with the court's business. As the assistant court administrator testified, the cases at bar were listed at number 48 on the list for the session following the August term, but were not reached.[9] Thereafter, although the trial list for the October session was already full, the court listed these cases pursuant to a Commonwealth request. Importantly, the instant cases could have been tried during this term except that appellant's counsel was unavailable because he was involved in another trial. The record illustrates further that the cases *sub judice* were not reached in December, initially due to trial of another of appellant's cases[10] and then due to the Commonwealth's request for continuances of appellant's remaining cases because of the unavailability of an essen-

**9.** One of appellant's other cases, however, was moved up to number 13 at the Commonwealth's request, and tried during that session. Following that trial, the Commonwealth and appellant's counsel stipulated that they would not try any more of appellant's cases during that term.

**10.** The case tried during December was severed at appellant's request.

14

tial Commonwealth witness. Similarly, although the court listed these matters during January, again at the Commonwealth's request, the Commonwealth called yet another of appellant's cases, the trial lasting the entire second week of that session.[11] The cases herein were then tried during the following term. In view of the foregoing, we are satisfied that the court scheduled the instant five cases for trial on the earliest date consistent with its business.[12]

Accordingly, we find that the Commonwealth fully complied with the requirements of *Mayfield* and Rule 1100. The trial court therefore did not err in granting the Commonwealth's application for an extension of time within which to commence trial.

The final issue is appellant's claim that the trial judge erred in denying his motions for a mistrial when two of the Commonwealth's witnesses allegedly referred to appellant's involvement in other crimes. Appellant presents five separate requests for a mistrial for our review. Appellant's brief at 23–29.

The decision whether to declare a mistrial is within the sound discretion of the trial judge and will not be reversed absent a flagrant abuse of that discretion. *Commonwealth v. Hamm*, 325 Pa.Super. 401, 412, 473 A.2d 128, 133 (1984); *Commonwealth v. Seigrist*, 253 Pa.Super. 411, 418, 385 A.2d 405, 408 (1978). It has long been held that "evidence of a distinct crime, except under special circumstances,[13] is inadmissible against a defendant who is being tried for another crime, because the commission of one

11. The Commonwealth explained that it called this case because it had been tried previously and ended in a mistrial and the January session was the last trial term within 180 days of the mistrial.

12. We note that appellant received five separate trials from July 2, 1980 through January 19, 1981.

13. As we discussed *supra,* evidence of prior crimes may be used to show: (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the other; or (5) to establish the identity of the person charged with the commission of the crime on trial. *Commonwealth v. Morris, supra,* 493 Pa. at 174–175, 425 A.2d at 720.

crime is not proof of the commission of another, and the effect of such evidence is to create prejudice against the defendant in the jury's mind." *Commonwealth v. Morris, supra,* 493 Pa. at 174–175, 425 A.2d at 720. Thus, clear references to prior unrelated criminal activity warrant a mistrial. *Commonwealth v. Watson,* 355 Pa.Super. 160, 167, 512 A.2d 1261, 1265 (1986). Our Supreme Court made clear in *Commonwealth v. Nichols,* 485 Pa. 1, 4, 400 A.2d 1281, 1282 (1979), however, that "(not) all references which may indicate prior criminal activity warrant reversal." Mere "passing references" to prior criminal activity will not necessarily require reversal unless the record illustrates that prejudice resulted from the reference. *Id.* Moreover, prejudicial effect may be overcome by cautionary instructions or an appellate court may find that any error was harmless. *Commonwealth v. Seigrist, supra,* 253 Pa.Super. at 419, 385 A.2d at 409.

When the Commonwealth introduces evidence which does not directly establish appellant's prior criminal conduct, but which is merely suggestive of it, "... the operative question is whether the jury 'could reasonably infer from the facts presented that the accused had engaged in prior criminal acitvity.'" *Commonwealth v. DeCampli,* 243 Pa.Super. 69, 76, 364 A.2d 454, 457 (1976), citing *Commonwealth v. Groce,* 452 Pa. 15, 20–21, 303 A.2d 917, 919 (1973), *cert. denied,* 414 U.S. 975, 94 S.Ct. 290, 38 L.Ed.2d 219 (1973). Additionally, the nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required. *Commonwealth v. Pursell,* 508 Pa. 212, 230, 495 A.2d 183, 192 (1985); *Commonwealth v. Williams,* 470 Pa. 172, 178, 368 A.2d 249, 252 (1977).

Guided by the foregoing principles, we have reviewed the testimony identified by appellant as requiring a mistrial. *See* appellant's brief at 23–29. For the reasons which follow, we agree with the trial court's disposition of each motion and therefore find no abuse of discretion.

First, none of the identified references were intentionally elicited by the Commonwealth. In fact, defense counsel elicited the fifth statement which it contends is objectionable. Second, with the possible exception of the fifth remark identified, none of the statements were of such a nature as to indicate to the jury that appellant had been involved in crimes other than the offenses for which he was on trial. Appellant was on trial for charges arising out of five separate burglaries. Thus, Joy Mack's statement that she "saw one of the people that was involved in some of the burglaries" wearing a jacket taken from one of the victim's houses (N.T. 2/25/81, 220–221), was consistent with appellant's involvement in the other incidents on trial, as was Richard Falasco's statement that, in order to throw the heat away from the northern end of town, appellant directed him to call Detective Villanova and advise the detective that he might find certain stolen items at an apartment located in another area of town (N.T. 2/27/81, 678). Neither does the third reference specified (N.T. 2/27/81, 692–693), support an inference of drug activity as contended by appellant. In fact, evidence that Mr. Falasco and appellant went to North Philadelphia and sold the video tape recorder tends to show appellant's intent to deprive the victim of the recorder, which is an element of the crime of receiving stolen property. Similarly, the fourth statement at issue, where Mr. Falasco testified that some of the gloves used were purchased by appellant (N.T. 2/27/81, 697), was directed to one of the burglaries on trial and therefore could not have reasonably supported an inference that appellant had engaged in other criminal activity. *See Commonwealth v. Hamm, supra,* 325 Pa.Super. at 412, 473 A.2d at 134 (Trial court did not err in denying mistrial where prosecutor's question about the use of gloves was directed only to the night of one of the burglaries on trial). Moreover, the testimony was relevant to indicate that appellant had prior knowledge of the burglary. Lastly, the fifth comment identified, where Trooper March testified that, "at the time that the disco was inspected, nothing from these particular crimes was identified" (N.T. 2/27/81, 707), was elicited by

defense counsel. *See Commonwealth v. Heaton*, 504 Pa. 297, 300–301, 472 A.2d 1068, 1070 (1984) (Where the allegedly objectionable testimony was given only in direct response to defense counsel's question, defense counsel was to be held to the consequences of his choice.). Furthermore, defense counsel neither objected when the answer was stated, nor requested a cautionary instruction. Instead defense counsel waited until after he finished his cross-examination and the prosecution went through its redirect before moving for a mistrial. Finally, the record does not reflect that prejudice resulted from the reference. Under these circumstances, admission of the statement cannot justify the grant of a new trial. Accordingly, we find no abuse of discretion in the trial court's denials of appellant's requests for a mistrial.

Judgment of sentence affirmed.